Timothy R. CASSIAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 629–82.

Court of Criminal Appeals of Texas, En Banc.

Nov. 19, 1986.

Bobby Perel, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Nick O. Martinez, Jr. and R. Bradford Stiles, Asst. Dist. Attys., El Paso, Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW ON MOTION FOR REHEARING

CLINTON, Judge.

Our prior opinion in this cause has been challenged by appellant on motion for rehearing.

Appellant was convicted of the offense of possession of cocaine and his punishment assessed at six years in the Texas Department of Corrections.

In his sole ground of error on appeal he maintained that the affidavit in support of the search warrant whereby the evidence against him was obtained was deficient under state and federal constitutions. Specifically he argued that the affidavit was "insufficient on its face under *Aguilar v. Texas*, 378 U.S. [108, 84 S.Ct. 1509, 12 L.Ed.2d] 723, (1964)," and under this Court's panel opinion in *Carmichael v. State*, 607 S.W.2d 536 (Tex.Cr.App.1980). The affidavit, sworn to at 10:45 a.m. on April 4, 1980, reads in relevant part as follows:

"I, TRINI RABE, do solemnly swear that heretofore, on or about the 3 day of April, 19780 [sic], in El Paso County, Texas, one TIM CASSIAS, also known as TIMOTHY R. CASSIAS, did then and

there unlawfully possess a narcotic drug, to wit: Marihuana and cocaine, seen by informant in the last 24hrs., and I do have good reason to believe and do believe that said narcotic drug is now concealed by TIM CASSIAS AKA TIMOTHY R. CASSIAS, in the City of El Paso, County of El Paso, Texas, at: 724 Del Mar Street. [A brief description of "a red brick home" with "white garage door" follows], which said premises are in the possession and under control of TIM CASSIAS aka TIMOTHY R. CASSIAS. My belief as aforesaid is based on the following facts: A confidential informant who is well known in the community, a reputable person and who is gainfully employed and who affaint [sic] has known for many years to be reliable person. Affaint [sic] has checked criminal history on people involved and shows evidence the two people involved show the most recent arrest as Dec. 1979, arrest made for possession of dangerous drugs and possession of stolen property. Surveillance has been set up and activity is taking place in the garage area, where these people back their cars all the way into the garage, where a storage is visibly seen directly in back of the garage area. One Keith Henderson was observed by affaint [sic] on 4–2–80 carrying brick type packages believed to be marijuana. A plastic tub with plastic tubeing [sic] was also observed being carried into the back yard by one Keith Henderson. Informant has also revealed that Keith Henderson frequents the place on a daily basis. This information has been checked out by affaint [sic] and surveillance began since March 31, 1980, by affaint [sic]. Affaint [sic] has also observed several narcotic users in and out of 724 Del Mar, staying for brief periods of time.

The unpublished opinion of the El Paso Court of Appeals was issued on June 16, 1982, one year prior to the decision of the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The court of appeals held that the information contained in the affidavit pertaining to the informant met neither the "veracity and reliability" nor the "basis of knowledge" prong of the test of *Aguilar,* supra, and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Nevertheless, looking to the information derived from the surveillance and apparently within the firsthand knowledge of the affiant himself, the court of appeals found "that the facts submitted were sufficient to justify the magistrate's conclusion that the contraband sought was probably on the premises to be searched at the time of the affidavit. *Gish v. State,* 606 S.W.2d 883, 886 (Tex.Cr.App.1980)."

In his petition for discretionary review appellant contends that in so ruling the court of appeals "has so far departed from and is in such conflict with the applicable decisions of this Honorable Court that the Court of Criminal Appeals must exercise its power of supervision." See Tex.Cr. App.R., Rule 302(c)(6), now Tex.R.App.Pro. Rule 200(c)(6). We granted his petition to examine this contention.

■■■ Probable cause to support the issuance of a search warrant exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. E.g., *Gish v. State,* supra; *Schmidt v. State,* 659 S.W.2d 420 (Tex.Cr.App.1983). Where facts and circumstances within the knowledge of a police officer, arising from a reasonably trustworthy source, would warrant a man of reasonable caution in the belief that items of contraband or evidence of a crime may presently be found in a specified place, there is probable cause to issue a warrant to search that place. See *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Tolentino v. State,* 638 S.W.2d 499 (Tex.Cr.App.1982); *Lopez v. State,* 535 S.W.2d 643 (Tex.Cr.App.1976); *Brown v. State,* 657 S.W.2d 797 (Tex.Cr. App.1983) (Clinton, J., concurring). A search warrant affidavit must be read in a commonsense and realistic manner, and reasonable inferences may be drawn from

the facts and circumstances contained within its four corners. *Lopez v. State*, supra; *Winkles v. State*, 634 S.W.2d 289 (Tex.Cr. App.1982) (Opinion on State's Motion for Rehearing). It is on the basis of these latter two principles that the court of appeals held the information within the affidavit *sub judice* provided probable cause. We disagree.

The only information provided by the confidential informant in this affidavit is that sometime within twentyfour hours of the morning of April 4, 1980, he had seen "Marihuana and cocaine," *apparently* in appellant's possession, at an undisclosed location. This informant is "well known in the community, a reputable person ... who is gainfully employed and who affaint [sic] has known for many years to be reliable person." Clearly there exist some bases to conclude the information thus acquired was trustworthy. Under the *Aguilar* test, which provides relevant though no longer determinative criteria in assessing informant reliability under the Fourth Amendment, we must look to the informant's "veracity" and to the "basis of his knowledge." Here, the basis of the informant's knowledge was personal observation. Furthermore, his veracity was established to some extent by virtue of his gainful employment, though conclusory statements as to his reliability and reputation in an undisclosed community establish little if anything.[1] But even assuming total trustworthiness on the informant's part, his information alone fails to show that contraband could be found at 724 Del Mar Street. Neither appellant nor the drugs are connected in any way with that address.[2]

This is not, therefore, a case in which we are primarily concerned with evaluating the reliability of information that is hearsay as to the affiant, whether under the test of *Aguilar* or that of *Gates*. Rather, we must decide, at least for Fourth Amendment purposes, whether under the "totality of the circumstances" the information in the affidavit which was a product of the surveillance of 724 Del Mar, and thus presumably within the personal knowledge of the affiant, is such as to provide a "substantial basis" to support the magistrate's finding that a cautious man would be warranted in the belief that contraband would presently be found on that premises. *Gates*, supra; *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). We find that it did not.

The affiant states that he "checked criminal history on two people involved[,]" and found "the most recent arrest as Dec., 1979," for possession of dangerous drugs and stolen property. A number of questions arise from these assertions. To begin with, the identity of the "two people involved" is not disclosed, nor what they are allegedly "involved" in. Perhaps these "two people" are appellant and Keith Henderson, but such a conclusion is strictly conjectural. Nor is the neutral reader told by what means the criminal history of these people was checked, and whether the "most recent arrest" was for one, the other, or both of these people. That an arrest for one or both of them concerned possession of a dangerous drug, see V.A.C.S., Art. 4476–14, Sec. 2(a), or stolen property does not make it probable they will presently possess controlled substances. Finally, neither of these "two people" is connected in any way with the home at 724 Del Mar Street, unless, of course, one of them happens to be Keith Henderson.

The affidavit next informs that "surveillance was set up[,]" but does not say where. While it is not totally unreasonable to believe the residence of 724 Del Mar is

---

1. Indeed, following *Wood v. State*, 573 S.W.2d 207, 215–16 (Tex.Cr.App.1978), we would be constrained to hold that the "veracity" prong of the *Aguilar* test had not been met, since it is not asserted here that the informant lacked any criminal record. Nor is it shown he had given information in the past that had proven accurate.

2. The assertion that the "premises are in the possession and under the control of" appellant is not attributed to the informant. In fact, it is purely a conclusory statement, the source of which is not given nor the reliability vouched for.

what is meant, that is by no means selfevident. We are told some undescribed "activity" took place "in the garage area" at some unspecified time during the surveillance (which we are later informed "began since March 31, 1980"). That "these people[,]" (presumably but not definitively the "two people" alluded to above), back their cars all the way into the garage is not conduct unusual on its face. Nor is the presence of some kind of "storage" there. We are not even told that the "activity" in the garage somehow involved this storage facility. Thus far the affidavit has described only innocent facts.

Next it is revealed that on "4–2–80" affiant observed "[o]ne Keith Henderson" "carrying brick type packages believed to be marihuana." We are not told how affiant can identify Keith Henderson. Again, that Henderson is one of the "two people involved" is left to conjecture. Where he was seen carrying the packages is not disclosed. By virtue of its juxtaposition to the information immediately preceding the assertion, we may suppose it was at the place under surveillance, which in turn we can only guess was the "home" at 724 Del Mar Street. The number of packages Henderson was seen carrying is a mystery.

Affiant does not say who believed the packages to be marihuana, nor the basis for this belief, other than that they were "brick type." The reader is given no basis in the affiant's experience to lead him to accept this assessment of the contents.[3] Conspicuously absent is the common litany about cellophane wrappers, green leafy substance or strong odor of marihuana emanating from the premises. Furthermore, the significance of the plastic tub and tubing Henderson was seen carrying to the backyard escapes us. Common knowledge does not suggest that sale or ingestion of marihuana or cocaine calls for the use of such items. Nor does the affidavit set out information to justify such a conclusion as a matter of specialized knowledge—e.g., that through his experience he knows such apparatus are commonly used in "cutting" cocaine. For all we know, Henderson planned some innocent activity with tub and tubing.[4]

█ Finally we note affiant's observation of "several narcotics users in and out of 724 Del Mar, staying for brief periods of time." We are not told how affiant came by his information that these "several" people were narcotics users. There is no showing that marihuana or cocaine is

---

**3.** It is true this Court held in *Richardson v. State,* 622 S.W.2d 852 (Tex.Cr.App.1981):

> "An affiant is not required to delineate his drug identification expertise within the four corners of the affidavit in order to provide a magistrate with sufficient probable cause to support the issuance of a search warrant. *Palmer v. State,* 614 S.W.2d 831; *Torres v. State,* 552 S.W.2d 821; *Pecina v. State,* 516 S.W.2d 401."

Nonetheless it was noted in *Richardson* that while drafting his affidavit the affiant officer had in hand "a baggy containing a green leafy plant substance procured from [the defendant's] home by the informant." The Court went on to hold that a chemical test or other "proof positive" that the substance observed was in fact contraband is not necessary to establishment of probable cause. This latter holding is of course consistent with the long held notion that "the term 'probable cause' means less than evidence which would justify condemnation," *United States v. Ventresca,* 380 U.S. 102, 107, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, 688 (1965).

The former holding, however, seems to have originated in *Pecina v. State,* supra, wherein the

Court ruled, in the face of a claim that the warrant affidavit contained no showing the informant could readily recognize contraband:

> "The affidavit presented here is substantially the same as that approved by this court in *Wetherby v. State,* Tex.Cr.App., 482 S.W.2d 852. See also *Cummins v. State,* Tex.Cr.App., 478 S.W.2d 452."

516 S.W.2d at 403. However, in neither *Wetherby* nor *Cummins* was the Court presented with the contention raised in *Pecina* and *Richardson.* Thus, *Pecina* seems to have engendered a rule without a rationale. To its credit, the Court in *Palmer* and *Torres,* both supra, relied on the additional rationale that since the affidavit averred the informant had given information about narcotics in the past which had proven accurate, it could reasonably be inferred he knew drugs when he saw it.

**4.** Informant says Henderson frequents "the place." Assuming he means 724 Del Mar Street, and putting aside all reservations about informant's veracity, see n. 1 *ante,* and the absence of any basis of knowledge for this statement, we nevertheless find nothing significant in this fact.

among the narcotics these people are known to use. At any rate, though the fact that known narcotics users frequent a place for brief stretches of time may suffice to corroborate an informant's tip, thus combining to establish probable cause, e.g., *Polanco v. State*, 475 S.W.2d 763 (Tex.Cr. App.1972), it does not by itself provide more than a reasonable suspicion that contraband may be found there.

■ Without going through them with the particularity that we have here, the court of appeals recognized that "each of these factors, standing alone, would be insufficient to support issuance of a search warrant." But, the court continued, "[e]ach factor is ... probative and may be considered in context with the others to determine the existence of probable cause." The court then concluded that "the cumulative import of all the allegations contained in the affidavit was sufficient to justify the magistrate's issuance of the search warrant."

It is one thing to draw reasonable inferences from information clearly set forth within the four corners of an affidavit. Thus, for example, it is sometimes permissible to presume reliability of an informant by virtue of the detailed nature of the information he supplies. E.g., *Abercrombie v. State*, 528 S.W.2d 578 (Tex.Cr.App. 1975). It is quite another matter to read material information into an affidavit that does not otherwise appear on its face. We cannot, in the interest of a commonsense and realistic approach to interpretation of affidavits, "infer" a connection between informant's observation of appellant with contraband, and the residence at 724 Del Mar Street. Further, we can only speculate it was there that the "brick type packages" were seen, and we find no objective data to show it was reasonable to believe they were marihuana. While affiant does tell us that "several" people he conclusorily states were narcotics users frequented this address, this fact alone will not give rise to probable cause.

Unlike the information given by the informant and included in the warrant affidavit in *Massachusetts v. Upton*, supra, "the pieces" in the instant affidavit do not "fit neatly together" to provide a substantial basis to support the magistrate's determination of probable cause. 466 U.S. at 733, 104 S.Ct. at 2088, 80 L.Ed.2d at 727. The facts and circumstances presented in this affidavit are too disjointed and imprecise to warrant a man of reasonable caution in the belief that marihuana and cocaine would be found at 724 Del Mar Street on April 4, 1980.

The motion for rehearing is granted. The judgments of court of appeals and the trial court are reversed and the cause is remanded for a new trial.

ONION, P.J., and TOM G. DAVIS, J., concur in result.

W.C. DAVIS and WHITE, JJ., dissent.