IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0636-05






JEFFERY SCOTT DAVIS, Appellant



v.



THE STATE OF TEXAS
 




ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS





 Price, J., delivered the opinion of the Court in which Keller, Meyers,
Womack, Keasler, Hervey,Holcomb and Cochran., J.J., joined. Johnson, J.,
concurred in the result. 


O P I N I O N 



 The appellant pled guilty to the manufacture of methamphetamine, but reserved his
right to appeal the denial of his motion to suppress evidence obtained as a result of a search
warrant. He appealed and the court of appeals agreed that the information within the
affidavit was insufficient as a basis for the warrant. We granted the State's petition for
discretionary review, and, finding the affidavit sufficient to justify the magistrate's finding
of probable cause, we will reverse the judgment of the court of appeals.


I. Facts and Procedural History


 The appellant was charged with the manufacture of methamphetamine. At trial, the
appellant filed a motion to suppress the fruits of a combination search and arrest warrant that
authorized the search of his property and his arrest. His motion to suppress was denied and
he pled guilty, reserving his right to appeal. On appeal, the appellant claimed that the trial
court erred in denying his motion because there were not specific, credible facts within the
four corners of the supporting affidavit that would allow a magistrate to determine that the
information in the affidavit was reliable enough to provide a substantial basis for the
conclusion that an offense had been committed and that contraband would probably be found
at the appellant's residence.

 We set forth the warrant affidavit in its entirety:

CASE # TF-03-0081 WARRANT (DA) #


AFFIDAVIT FOR SEARCH AND ARREST WARRANT

 

THE STATE OF TEXAS COUNTY OF MONTAGUE

 

The undersigned Affiant, being a Peace Officer under the laws of the State of
Texas and being duly sworn, on oath makes the following statement and
accusations:

 

1. There is in MONTAGUE County, Texas, a suspected place and premises
described and located as follows: A single family mobile home that is known
as 701 Young Street, Nocona, Montague County, Texas. S[ai]d residence
is grey in color with white trim. Said residence is located on the west side
of the roadway and the front door faces east.

 

Said suspected place and premises, in addition to the foregoing
description, also includes all other buildings, structures, places, vehicles
on said premises and within the curtilage, if said is a residence, that are
found to be under the control of the suspected party named below and in,
on, or around which said suspected party may reasonably reposit or
secrete property that is the object of the search requested herein.

 

2. There is at said suspected place and premises property concealed and kept
in violation of the laws of the State of Texas and described as follows: drugs
kept, prepared, or manufactured in violation of the laws of this state,
to-wit, Methamphetamine. Further, Affiant believes that suspected party
has at said suspected place other paraphernalia, implements, and
instruments used in the commission of the offense of Manufacture and
Distribution of Methamphetamine.

 

3. Said suspected place and premises are in charge of and controlled by each
of the following persons: Jeffery Scott Davis, white male, DOB 01- 22-76[.]

 

 4. It is the belief of Affiant, and he hereby charges and accuses, that: Jeffery
Scott Davis is intentionally and knowingly in unlawful possession of a
controlled substance listed in the Texas Health and Safety Code, to wit,
Methamphetamine.

 

5. Affiant has probable cause for said belief by reason of the following facts:
Your Affiant is a Texas commissioned Peace Officer and has been so
commissioned for over 10 years. Your Affiant is employed by the Wichita
Falls Police Department and assigned, as a Narcotics Investigator, to the
North Texas Regional Drug Enforcement Task Force. During the time
your Affiant has been assigned as a Narcotics Investigator, your Affiant
has been responsible for several investigations of controlled substances
violations including the Manufacture and Distribution of
Methamphetamine. In addition, your Affiant has attended training in
narcotics investigations including search warrant preparation, evidence
collection and investigations of individuals who derive substantial income
from the illegal importation, manufacture, distribution, and sale of illegal
controlled substances. Your Affiant has also attended basic and advanced
training in clandestine laboratories and is certified by the Drug
Enforcement Administration to enter and seize clandestine drug
manufacturing laboratories.

 

Your Affiant, along with Task Force investigators and DPS Investigators,
has been conducting a joint investigation regarding Jeffery Scott Davis['s]
involvement in the Manufacture and Distribution of Methamphetamine.
During this investigation investigators have gathered information that
Davis was manufacturing methamphetamine at 701 Young Street,
Nocona, Texas. Investigators have received information from confidential
informants that stated Davis was manufacturing the methamphetamine
inside the residence as well as in a shed located in the backyard of said
residence. Investigators have received information that Davis was
purchasing items used in the manufacture of methamphetamine including
starter fluid (ether) and coffee filters. Investigators have received
information from Crime Stoppers that described a chemical odor emitting
from the residence at 701 Young Street and that Davis was manufacturing
methamphetamine at the residence.

 

On 03-18-03, at approximately 0400 hrs, Officer Mitchell Westervelt was
on patrol in Nocona and drove past residence. Westervelt stated that he
could smell a strong chemical odor he has associated with the
manufacture of methamphetamine emitting from the residence at 701
Young Street. Westervelt informed Chief Holcomb of the odor and
Holcomb contacted your Affiant.

 

Based on the information received from numerous sources and the odor
emitting from the residence, your Affiant firmly believes that Jeffery Scott
Davis is intentionally and knowingly in possession of a quantity of
methamphetamine at the above listed location.

 

Further, based on your Affiant's experience as an Investigator, it is known
that drug dealers normally keep certain records indicating drug
quantities handled, cost, prices, names and telephone number of buyers
and suppliers as well as information regarding bank accounts. It can also
be presumed that these and other records indicating premise 
occupancy/residence will be found on the said property. Your Affiant
further alleges that weapons found on the said property are seizable as
indicative of drug dealings since possession of a firearm tends to
demonstrate a likelihood that the dealer took steps to prevent contraband,
paraphernalia and the proceeds (money) from being stolen, similarly as
other tools of the trade (scales, plastic baggies, cutting equipment and
narcotics equipment) which are also seizable would be kept. Further, your
Affiant alleges the above constitute specific articulable facts from which
a reasonable person could draw [a] rational inference that large sums of
cash found at the premise (absent proof to the contrary) were derived
from illegal narcotics sales and therefore subject to seizure.


 The State conceded in the court of appeals that "the background information in the
warrant . . . was conclusory and failed to provide enough detail to alone provide probable
cause for the search." (1) The State argued however, that the warrant was a "smell" warrant
which was "never intended to . . . rise or fall upon the corroborating facts stated in the
affidavit." (2) The critical information, the State urged, is contained in the following portion
of the affidavit:

On 03-18-03, at approximately 0400 hrs, Officer Mitchell Westervelt was on
patrol in Nocona and drove past residence. Westervelt stated that he could
smell a strong chemical odor he has associated with the manufacture of
methamphetamine emitting from the residence at 701 Young Street. Westervelt
informed Chief Holcomb of the odor and Holcomb contacted your Affiant.


In analyzing the affidavit, the court of appeals stated that information of this type will be
considered persuasive in supplying probable cause to search a particular premises if the
magistrate can find the affiant qualified to recognize the odor of the contraband. (3) 

 After setting forth the general requirements of probable cause as the basis for a search
warrant, (4) and pronouncing that the informant's reliability and basis of knowledge are relevant
in determining the probativeness of his assertions, (5) the court of appeals noted that nowhere

within the affidavit is there any description of Officer Westervelt's expertise or experience
in recognizing the odor associated with the manufacture of methamphetamine. (6) The court
of appeals averred that while "the veracity of an officer is presumed if unchallenged,
expertise is not presumed." (7) Over a dissent which noted that "common sense and reasonable
interpretation" dictate that Westervelt "had enough experience and expertise that he had
previously smelled the same chemical odor and had previously associated it with the
manufacture of methamphetamine," the majority held that this assumption added information
to the affidavit that "is contained nowhere in it." (8) The majority concluded that the affidavit
was insufficient to support the warrant because it is silent as to Westervelt's experience, his
proximity to the residence other than that he "drove past" it, the length of time he spent
outside the residence, or anything else that would show the reliability of his suspicion. 
Accordingly, the court of appeals remanded for a new trial to be conducted without the
evidence that should have been suppressed.

 The State petitioned for discretionary review. The State argues that the court of
appeals did not afford sufficient deference to the magistrate's decision to issue the search
warrant. The State claims that the warrant was substantiated by a police officer's statement
that he "could smell a strong chemical odor he has associated with the manufacture of
methamphetamine emitting from [the appellant's] residence." This, the State contends, when 
combined with the other evidence in the affidavit, supplied a substantial basis for the
magistrate to issue the search warrant. We granted the State's petition in order to determine
whether the court of appeals erred in evaluating the search warrant affidavit by not paying
sufficient deference to the magistrate's probable cause determination, applying a
hypertechnical rather than a practical, common sense analysis, and failing to allow the
magistrate to draw reasonable inferences from the facts stated in the affidavit.

II. The Law

 Probable cause to support the issuance of a search warrant exists where the facts
submitted to the magistrate are sufficient to justify a conclusion that the object of the search
is probably on the premises to be searched at the time the warrant is issued. (9) Further, a 
search warrant affidavit must be read in a common sense and realistic manner. (10) Reasonable
inferences may be drawn from the facts and circumstances contained within the four corners
of the affidavit. (11)

 In Cassias v. State, we applied these rules to determine whether a magistrate was
justified in issuing a search warrant. We held that the facts stated within the affidavit were
not sufficiently specific to the residence sought to be searched to support a finding of
probable cause that marijuana and cocaine would be found there. Although an apparently
reliable confidential informant had seen Cassias in possession of these drugs within twenty-four hours of the affiant's request for the warrant, nothing in the affidavit connected him to
the residence. The affidavit alluded to a surveillance, but did not clearly indicate where the
surveillance occurred. In the course of that surveillance, a different individual, not Cassias,
was observed "carrying brick type packages believed to be marijuana." That same individual
was also seen carrying a plastic tub and tubing into the back yard. Finally, the affidavit stated
that at some unspecified time the affiant had seen "several narcotics users" "in and out" of
the residence "for brief periods of time." (12)

 We held it was unreasonable for the magistrate to find probable cause to search the
residence based upon this affidavit. Even assuming that it was even the named residence that
was the subject of the surveillance, nothing but apparently innocent activity was observed. 
The affidavit supplied no basis to support the conclusion that the "bricks" were marijuana,
there being no description of the characteristics or odor of the bricks that would lead the
magistrate to a conclusion that they were marijuana, or even explain why the affiant believed
they were. There was no description of the possible use of a tub or tubing that was said to
be at the location, or how these articles are consistent with illegal activity. Finally, there was
no explanation as to why the affiant concluded that the persons observed were narcotics
users. The affiant failed to state how he knew the persons were narcotics users and how their
presence on the property led to the conclusion that marijuana and cocaine would be present. (13)

 In holding the affidavit insufficient to support the magistrate's finding of probable
cause, we observed:

 We cannot, in the interest of a commonsense and realistic approach to
interpretation of affidavits, "infer" a connection between informant's
observation of appellant with contraband, and the residence at 724 Del Mar
Street. Further, we can only speculate it was there that the "brick type
packages" were seen, and we find no objective data to show it was reasonable
to believe they were marihuana. While affiant does tell us that "several"
people he conclusorily states were narcotics users frequented this address, this
fact alone will not give rise to probable cause. (14)


In the instant case the court of appeals held the affidavit to be defective because it did not
adequately specify the basis for Officer Westervelt's belief that the "strong chemical odor"
he detected "emitting" from the residence at 701 Young Street as he "drove past" is
"associated with the manufacture of methamphetamine." This holding is reminiscent of our
conclusion in Cassias that the affidavit there did not provide any objective basis to support
the affiant's belief that the "brick type packages" contained marijuana, or that the tub and
tubing were somehow associated with the presence of marijuana or cocaine. However, we
think the instant case is distinguishable.

III. Analysis


 Following Cassias, we begin by noting that we agree with the court of appeal's
holding, and the State's concession, that the affidavit's background information was, by
itself, insufficient to support the issuance of a warrant. (15) None of the background
information gives a time frame that would corroborate the existence of methamphetamine
on the premises when the warrant was requested. Aside from Officer Westervelt's assertion
that he smelled a chemical odor at a specific time and place, the level of specificity of the
affidavit as to time and place failed to support the search warrant. The magistrate would
have had no reasonable basis to infer that the Crime Stopper's tip or the previous
investigation occurred at a time that would substantiate a reasonable belief that the object of
the search was on the premises to be searched at the time the warrant was issued. (16) 

 The critical portion of the warrant, on which this case does indeed rise or fall, then,
is the affiant's assertion that Westervelt smelled an odor that he had associated with the
manufacture of methamphetamine. Accordingly, we focus our examination on whether the
court of appeals erred to hold that the affidavit was insufficient to support the issuance of a
warrant because it did not contain information regarding Westervelt's training or experience
or his previous encounters with the odor of the manufacture of methamphetamine. Is it
reasonable for a magistrate to infer previous experience with the odor of methamphetamine
manufacture when an officer states only "that he could smell a strong chemical odor he has
associated with the manufacture of methamphetamine," without also delineating his previous
experience or credentials? (17) 

 The court of appeals held that it was improper to infer experience, proximity to a
residence, length of time spent outside a residence, or anything else that would show the
reliability of an officer's suspicion from Westervelt's statement. None of these factors,
however, is an indispensable requirement for the issuance of a warrant. Under the Fourth
Amendment, an affidavit is sufficient to establish probable cause if, from the totality of the
circumstances reflected in the affidavit, the magistrate was provided with a substantial basis
for concluding that probable cause existed. (18) If an affiant seeking a search warrant attests
to the presence of an odor and a magistrate finds the affiant qualified to recognize the odor,
this information is considered persuasive in obtaining a warrant. (19) The affiant in this case,
properly relying on facts supplied by another officer, (20) asserted that on the day the affidavit
was prepared, an officer drove past the residence, identified it by address, and smelled an
odor that he has associated with the manufacture of methamphetamine. On these facts alone,
without any other information, the magistrate was authorized to issue the warrant as long as
the officer was "qualified to recognize the odor." That is the only relevant inquiry. 

 At the outset, could the magistrate reasonably have inferred that Westervelt is a
trained, commissioned police officer? We think this was a reasonably available inference. 
The affidavit identified Westervelt as an "Officer . . . on patrol in Nocona." It does not
distort common sense or read additional facts into the affidavit to infer from this information
that Westervelt was a local police officer. This inference, in turn, lends credibility to his
assertion that he identified the odor of the making of methamphetamine, because it is much
more probable that a peace officer would have experience with that odor than an average
citizen. (21) Westervelt's statement that "he has associated" the odor he detected with the
manufacture of methamphetamine reasonably may be read to imply past experience with the
odor generated by the process of cooking methamphetamine. (22)

 It is not unreasonable to infer that when a person identifies a smell by association, he
has encountered that odor-causing agent before. This is especially so when that person may
reasonably be expected to have had some experience with that kind of odor. For example,
if a pilot says, "That smells like jet fuel," the natural assumption is that, because he is a pilot,
he has previously encountered jet fuel and recognizes it specifically by its smell. That is not
an unreasonable inference. Neither is the inference that a police officer in today's society,
with the current prevalence of methamphetamine, who says that he smells an odor that "he
has associated" with the manufacture of methamphetamine, has previously come into contact
with a methamphetamine laboratory and can recognize the odor it emits. (23) 

 We also note that the background information, which all agree was insufficiently
specific when considered in isolation, was nevertheless relevant to the probable cause
determination because it tends to corroborate Westervelt's statement. Taken together with
his perception of the presence of the distinctive odor of a methamphetamine laboratory, the
Crime Stopper's tip and the confidential informant's additional information "supports the
Magistrate's determination that there was 'a fair probability that contraband or evidence of
a crime' would be found" at the appellant's home. (24) "'A grudging or negative attitude by
reviewing courts toward warrants,' (25) is inconsistent both with the desire to encourage use of
the warrant process by police officers and with the recognition that once a warrant has been
obtained, intrusion upon interests protected by the Fourth Amendment is less severe than
otherwise may be the case." (26) A deferential standard of review is appropriate to further the
Fourth Amendment's strong preference for searches conducted pursuant to a warrant. (27)

 We are compelled to remark, however, that the affidavit in this case was far from
exemplary. Indeed, we would just as readily conclude that it was within the magistrate's
discretion to deny this search warrant, had he originally done so. A magistrate should not
have to resort so much to inferences and "common sense" conclusions that skirt the
boundaries of what constitutes a substantial basis, as they do here. When too many
inferences must be drawn, the result is a tenuous rather than substantial basis for the issuance
of a warrant. Best practice is for the affiant expressly to include an officer's experience,
background information, and previous associations with contraband so that little is left to
inference, and the magistrate has specifically articulated facts to evaluate. Otherwise, the
officer/affiant risks denial of his warrant, suppression of evidence at trial, or reversal on
appeal because the warrant lacks a substantial basis. But the law requires that we defer to
a magistrate's reasonable, common sense conclusions in assessing whether to issue a search
warrant. Appellate courts must allow for any reasonably available inferences and provide
magistrates appropriate deference. (28) Today, we have examined the affidavit and conclude
that the magistrate has drawn reasonably available inferences in finding that it supplied
probable cause.

 IV. Conclusion


 We hold that the trial court properly deferred to the magistrate's probable cause
determination in this case, and did not err to deny the appellant's motion to suppress. 
Accordingly, we reverse the court of appeals and reinstate the verdict of the trial court.


Delivered: September 13, 2006

Publish.
1. Davis v. State, 165 S.W.3d 393, 397 (Tex. App.--Fort Worth, 2005).
2. Ibid.
3. Id., at 397-98.
4. Ibid.
5. Ibid.
6. Id., at 399.
7. Id., at 400.
8. Ibid.
9. Cassias v. State, 719 S.W. 2d 585, 587 (Tex. Crim. App. 1988), citing Gish v. State, 606
S.W.2d 883, 886 (Tex. Crim. App. 1980); Schmidt v. State, 659 S.W.2d 420 (Tex. Crim. App. 1983).
10. Cassias, supra, at 587. See also Jones v. State, 833 S.W.2d 118, 123-24 (Tex. Crim. App.
1992).
11. Cassias, supra, at 587-88.
12. 

 Id., at 587.
13. Id., at 588-90.
14. Id., at 590.
15. The background information we speak of includes the tip to Crime Stoppers, the statements
of the confidential informant, the independent investigation by the affiant, and all other information
provided in the affidavit besides the "smell" portion that consists of Westervelt's statement.
16. Cassias, 719 S.W. 2d at 587.
17. If this inference is reasonable, then there is no problem, as in there was in Cassias, with
regard to the specificity of the place to be searched. Officer Westervelt clearly identified the
residence from which he claims the odor in question "emitted."
18. Illinois v. Gates, 462 U.S. 213, 238-39 (1983).
19. Moulden v. State, 576 S.W.2d 817, 819 (Tex. Crim. App. 1978). 
20. See United States v. Ventresca, 380 U.S.102, 108-09 (1965) (Observations reported to the
affiant by other officers engaged in the investigation can constitute a reliable basis for issuing a
warrant).
21. We note that this is a far cry from making the inference that someone identified only as a
"confidential informant" is a reliable person who has experience with the substance they are attesting
to having seen or smelled. A "confidential informant" could be a six year old child with no previous
experience with drugs or a hardened addict with years of contact with various substances. To assume
the latter, without more, however, would read facts into the warrant that simply do not appear, and
cannot be reasonably inferred or supplied by "common sense."
22. By contrast, the affidavit in Cassias contained no specific information, either express or that
could reasonably be inferred, with regard to the affiant's experience that would justify his belief that
a "brick type package" would be marijuana, or that a tub and tubes can be associated with marijuana
or cocaine. That the affiant in Cassias merely "believed" the bricks to be marijuana is not the same
as an ability to "associate" an odor with the manufacture of methamphetamine, which necessarily
implies some past experience with that odor.
23. 

 The result would be different if the officer had said only, "I smelled chemicals." Clearly,
there are many chemicals that are both legal and which produce a strong odor. It is the officer's
identification of the chemical odor with the manufacture of methamphetamine that lends sufficient
specificity as to make reasonably available the inference that such activity is going on at that
particular premises at that particular time.
24. Massachusetts v. Upton, 466 U.S. 727, 733 (1984).
25. Ventresca, 380 U.S. at 108. 
26. Upton, 466 U.S. at 733, citing Gates, 462 U.S. at 237, n. 10. 
27. Ibid.
28. See Jones, 833 S.W.2d at 123-24; Cassias, 719 S.W. 2d at 587.