IN
THE COURT OF CRIMINAL APPEALS

                                                     OF
TEXAS

 

                                                                              

                                                               NO.
PD-1013-06



 

 

                                             GUSTAVO RODRIGUEZ, Appellant

 

                                                                             v.

 

                                                        THE
STATE OF TEXAS

 



                         ON STATE=S PETITION FOR DISCRETIONARY REVIEW

                                     FROM
THE SECOND COURT OF APPEALS

                                                           TARRANT COUNTY 



 

Cochran,
J., delivered the opinion of the Court in which Keller, P.J., Price, Johnson, Keasler, Hervey, and Holcomb, JJ., joined.  Meyers,
J., filed a dissenting opinion in which Womack,
J., joined.

 

O P I N I O N

 








Appellant was charged with Possession
of Cocaine with Intent to Deliver.  He
filed a pre-trial motion to suppress claiming that the affidavit supporting the
search warrant did not contain sufficient facts to establish probable cause to
search his garage.  The trial judge
denied the motion to suppress, but the court of appeals reversed appellant=s conviction and held that the trial
court abused its discretion in not granting appellant=s motion to suppress.[1]  We hold that the affidavit did support the
magistrate=s finding of probable cause.[2]


I.








The evidence at trial showed that, in
November of 2003, an informant notified Fort Worth police officers that
appellant=s uncle, Eduardo Cantu, was selling
and transporting large quantities of cocaine in Fort Worth.  Numerous narcotics officers began
surveillance of Cantu and followed his car to a house at 4316 Goddard Street in
Fort Worth.  This house belonged to
appellant.  The officers watched Cantu
drive into the driveway and pull around to the rear of the house next to a
detached garage.  They saw Cantu get out
of his car and walk into the garage.  A
short while later, Cantu came out of the garage.  He was carrying a package in his right
hand.  Looking around nervously, Cantu
threw that package into the backseat of his car and drove away.

One of the undercover surveillance
officers followed Cantu for a few blocks in an unmarked car.  When he saw Cantu fail to use a turn signal,
he contacted a nearby uniformed patrol officer and asked that officer to stop
Cantu for the traffic violation.  During
that traffic stop, Cantu gave his written consent to search his car.  The patrol officer found a brown paper sack
containing three brick-like objects that looked like packaged cocaine on the
floor board of the left backseat.  Cantu
then told both the patrol and undercover officers that the three kilos of
cocaine in his car came from the garage on Goddard Street and that there was
more cocaine at that garage.  After
arresting Cantu, the undercover officer radioed the other surveillance
officers, who were still watching the Goddard Street house and garage, that
Cantu had told him that there were at least ten more kilos of cocaine at that
location.[3]  

One surveillance officer then left to
obtain a search warrant.  The remaining
officers could hear Atool noises, metal on metal banging@ coming from the garage.  The officers therefore decided to secure the
scene to prevent any destruction of evidence. 
They opened the garage door and saw appellant and two other males taking
apart a tool box on the bed of a pickup truck. 
The officers had the three males sit in one area of the garage until
they received confirmation that the magistrate had issued a search
warrant.  They then searched the garage,
found forty-three kilos of cocaine, and arrested appellant.  













Appellant was indicted for possession
of more than 400 grams of cocaine with the intent to distribute it.  After the trial court denied appellant=s motion to suppress, a jury
convicted him, and the trial judge sentenced appellant to forty-seven years= imprisonment.       The Fort Worth Court of Appeals reversed the trial court=s ruling on the motion to suppress,
concluding that the affiant=s Amere belief that the residence on Goddard Street was being
used to store large amounts of cocaine is not enough to support the issuance of
the search warrant.@[4] 
It also concluded that the facts set out in the affidavit,[5]
while they Amay lead to a suspicion that
contraband might be located at the residence,@ did not suffice to give the
magistrate Aa substantial basis for concluding
that a search would uncover evidence of wrongdoing.@[6] 

II.

 The Fourth Amendment commands that no
warrants, either for searches or for arrests, shall issue except upon probable
cause,[7]and
it reflects our constitutional preference for the warrant process in which
police officers present their facts to a neutral magistrate to decide if there
is probable cause to issue that warrant. 
As Justice Jackson famously stated,








The point of the Fourth Amendment, which often is not
grasped by zealous officers, is not that it denies law enforcement the support
of the usual inferences which reasonable men draw from evidence. Its protection
consists in requiring that those inferences be drawn by a neutral and detached
magistrate instead of being judged by the officer engaged in the often
competitive enterprise of ferreting out crime.[8]

 

In Aguilar
v. Texas,[9]
the Supreme Court stated that A[a]n evaluation of the constitutionality of a search warrant
should begin with the rule that >the informed and deliberate
determinations of magistrates empowered to issue warrants . . . are to be
preferred over the hurried action of officers . . . who may happen to make
arrests.=@[10]  
Indeed, in United States v. Ventresca,[11]
the Court declared that Ain a doubtful or marginal case [of probable cause] a search
under warrant may be sustained where one without one would fail.@[12]








The Supreme
Court has repeatedly reminded reviewing courts that they should Anot invalidate the warrant by
interpreting the affidavit in a hypertechnical, rather than a commonsense,
manner.  Although in a particular case it
may not be easy to determine when an affidavit demonstrates the existence of
probable cause, the resolution of doubtful or marginal cases in this area
should be largely determined by the preference to be accorded to warrants.@[13]
 Thus, even in close cases we give great
deference to a magistrate=s determination of probable cause to encourage police
officers to use the warrant process rather than making a warrantless search and
later attempting to justify their actions by invoking some exception to the
warrant requirement.[14]








The
cornerstone of the Fourth Amendment and its Texas equivalent is that a
magistrate shall not issue a search warrant without first finding Aprobable cause@ that a particular item will be found
in a particular location.[15]   The definition of the term Aprobable cause@ is, unfortunately, frequently beauty
in the eye of the beholder.  It is easier
to explain what Aprobable cause@ is not, rather than what it is. For
example, in Bower v. State,[16]
this Court stated that a Amagistrate is not bound by such finely tuned standards as
proof beyond a reasonable doubt or by a preponderance of the evidence; rather
his sole concern should be probability.@[17] 
The test is whether a reasonable reading by the magistrate would lead to
the conclusion that the affidavit provided a Asubstantial basis for the issuance of
the warrant[,]@[18] thus,  A[t]he magistrate=s sole concern should be probability.@[19] 
Probable cause exists when, under the totality of the circumstances,
there is a Afair probability@ that contraband or evidence of a
crime will be found at the specified location.[20]  It is a Aflexible and nondemanding@ standard.[21]








Neither
federal nor Texas law defines precisely what degree of probability suffices to
establish probable cause, but that probability cannot be based on mere
conclusory statements of an affiant=s belief.[22]  An affiant must present an affidavit that
allows the magistrate to independently determine probable cause and the
magistrate=s A>action[s] cannot be a mere
ratification of the bare conclusions of others.=@[23] 









On the other
hand, when reviewing a magistrate=s decision to issue a warrant, trial
and appellate courts apply a highly deferential standard in keeping with the
constitutional preference for a warrant.[24]  Thus, when an appellate court reviews an
issuing magistrate=s determination, that court should interpret the affidavit in
a commonsensical and realistic manner, recognizing that the magistrate may draw
reasonable inferences.[25]   When in doubt, we defer to all reasonable
inferences that the magistrate could have made. 








Just last
term, in Davis v. State,[26]
this Court addressed the level of specificity required in an affidavit for
a magistrate to find probable cause to issue a search warrant.   In Davis, the defendant was arrested
for the manufacture of methamphetamine seized under a search warrant.[27]  The magistrate had issued the warrant based
on the affiant=s statement that a patrol officer
drove past the defendant=s residence and Acould smell a strong chemical odor he
has associated with the manufacture of methamphetamine emitting from the
residence.@[28]  The court of appeals held that the
magistrate did not have a sufficient basis for issuing a search warrant because
the affiant did not specifically describe the officer=s Aexpertise or experience in
recognizing the odor associated with the manufacture of methamphetamine.@[29] 
This Court rejected that logic. 
We stated that it was a reasonable inference that a police officer who
smells something that he A>associat[es]= with the manufacture of
methamphetamine@ has had prior experience with methamphetamine.[30]  Otherwise he would not recognize the smell of
methamphetamine.  We concluded that when
this statement and its supporting inferences were combined with the other facts
in the affidavit (including an informant=s tip), the totality of the
information provided enough support for the magistrate=s decision to issue a warrant.[31]  The inquiry for reviewing courts, including
the trial court, is whether there are sufficient facts, coupled with inferences
from those facts, to establish a Afair probability@ 
that evidence of a particular crime will likely be found at a given
location.   The issue is not whether
there are other facts that could have, or even should have, been included in
the affidavit; we focus on the combined logical force of facts that are
in the affidavit, not those that are omitted from the affidavit.

III.








With those
general principles in mind, we turn now to the affidavit in this case.  This affidavit stated that an experienced
narcotics officer received information that Cantu was selling and transporting
large amounts of cocaine in Fort Worth. 
Based on this information, a team of officers began surveillance of
Cantu and followed him to 4316 Goddard Street. 
They
saw him Aarrive at this
location and pull into the driveway and park close to a metal shed@ or garage.  He went into the garage.  Shortly thereafter, they saw him come out of
the garage with a package in his right hand. 
As he looked around nervously, Cantu threw that package into the back
seat.    It is a fair inference from
these facts that Cantu obtained that package from the garage.  

The affidavit also states that after Cantu was stopped for a traffic
violation and consented to a search of his car, the patrol officer found a
brown paper sack, containing three brick-like objects both he and the
undercover officer believed to be cocaine on the backseat floor board of the
vehicleBjust exactly where
the surveillance officers had seen Cantu toss the Aobject@ that he had taken
out of the garage.  

It is also a fair inference from these facts that the object Cantu took
from the garage and tossed into the back seat area was the very same object
that the officers found in the back seat area. 
One object tossed into the car, one object taken out of the car. That
object looked like bricks of cocaine.

In this case,
the court of appeals focused on various facts that the affidavit did not
contain, rather than the facts that it did contain.  It also failed to defer to the reasonable
inferences that the magistrate could draw from those facts.  Most notably, the court of appeals stated
that








the affiant has not provided facts that would lead a
detached and neutral magistrate to determine that the brown paper sack
containing the cocaine was the same Aobject@ that Cantu obtained from the detached garage and
placed in the backseat of his car.[32]  

 

The issue in
this case is whether the magistrate could infer that the package of cocaine
found in the backseat of Cantu=s car was the very same package that Cantu carried out of the
garage and put into the backseat.  This
is a reasonable inference, especially since there was no suggestion, either in
the affidavit itself or at the motion to suppress hearing or at trial, that
there were any other packages in the backseat of Cantu=s car.  It is also an entirely reasonable inference
that the package did, in fact, contain Abricks@ of cocaine, that it came from the
Goddard Street garage, and that there was a fair probability that more cocaine
might still be in that same garage. 
Although it is possible that Cantu had taken all of the cocaine with him
when he left, it is at least equally reasonable to conclude that where there
was smoke (the original three- kilo package of cocaine) there was fire (a
larger cache of cocaine).  And where
there was loud banging within the garage from which the original package of
cocaine was taken, there might well be activities in progress to prepare those
additional amounts of cocaine for transport. 
Neither the officers nor the magistrate could be positive of the
existence of additional contraband in the garage, but it is certainly Aa fair probability@ that there was more cocaine stored
where the first package came from.  








We agree with
what the court of appeals is implying: the more information in an affidavit the
better.  In this case, the addition of a
single sentence, ACantu told the arresting officers that there was at least ten
kilos more of cocaine in the Goddard Street garage,@[33] would have made the reviewing courts= task much easier.  But that fact was not crucial to establish
probable cause.   In this case, the
affiant was sent from the Goddard Street location to draft an affidavit, find a
magistrate, present the affidavit and warrant to that magistrate, and wait for
the magistrate=s review and issuance of the warrant,
all while the other officers were at the Goddard Street garage detaining three
men and awaiting further instructions. 
It is not surprising that, in his haste, the affiant did not compose a
polished document that Adotted every i and crossed every t.@[34]








The proper
analysis of the sufficiency of a search-warrant affidavit is not whether as
much information that could have been put into an affidavit was actually in the
affidavit.  As reviewing courts, we are
obliged to defer to the magistrate and uphold his determination based upon all
reasonable and commonsense inferences and conclusions that the affidavit facts
support.

This
case  turns on two simple and reasonable
inferences:  First,  the magistrate could infer that the package
of cocaine found in the back seat of Cantu=s car was the exact same package that
the police saw Cantu take from the garage and throw into the back seat.  Second, 
A[i]t does not distort common sense or
read additional facts into the affidavit to infer from this information@[35] that there were more drugs located
at the Goddard Street garage.  Although
it is possible that there were really two different packagesBone containing cocaine that had been
in Cantu=s car all along and another,
innocuous package that Cantu carried with him out of appellant=s garageBthat scenario is based entirely upon
speculation as no second package was mentioned in the affidavit.[36]  And, although it is entirely possible that
Cantu took all of the cocaine stored at the Goddard Street garage with him when
he left, it is at least as likely that the three kilo package was just a small
part of the whole cache.








We hold that
these facts and inferences suffice to establish probable cause.  Probable cause is Aa fluid conceptBturning on the assessment of
probabilities in particular factual contextsBnot readily, or even usefully,
reduced to a set of neat legal rules.@[37] 
We must defer to the magistrate=s finding of probable cause if the
affidavit demonstrates a substantial basis for his conclusion.  It is not necessary to delve into all of the
facts that were omitted by the affiant, facts that could have been included in
the affidavit, or contrary inferences that could have been made by the
magistrate.  The only issue is whether
the facts that actually were in the affidavit, combined with all reasonable
inferences that might flow from those facts, are sufficient to establish a Afair probability@ that more cocaine would be found at
the Goddard Street garage.  We hold that
the facts in this case are sufficient.

Therefore, we
reverse the judgment of the court of appeals and remand this case to that court
to address appellant=s remaining claims.

Delivered: May 9, 2007

Publish











[1]
Rodriguez v. State, No. 02-05-21-CR, 2006 Tex. App. LEXIS 3373, *1 (Tex.
App. BFort
Worth April 27, 2006) (not designated for publication).





[2]
The State=s two
grounds for review read as follows: 

1.         The panel below erred by interpreting
the warrant affidavit in a hyper-technical manner which failed to accord proper
deference to the magistrate=s
right to make reasonable inferences from the facts contained therein and did so
despite the State=s express
arguments that such affidavits were to be construed in a common-sense manner
with cognizance of the magistrate=s
right to make reasonable inferences from the facts contained therein as to
whether contraband or other evidence of a crime would probably be recovered as
the result of a search of the specified premises. 

2.         The panel below erred by mistakenly applying the legal
principles for assessing probable cause in such a manner as to convert the
focus of the assessment of probable cause to a determination as to whether the
warrant affidavit provided an actual showing that contraband would be found as
a result of a search of the specified premises, instead of an assessment of
whether the magistrate had been provided a substantial basis for concluding
that contraband or other evidence of a crime would probably be recovered as the
result of a search of the specified premises. 





[3]
As discussed below, this information was left out of the affidavit.





[4]
Rodriguez v. State, No. 02-05-21-CR, 2006 Tex. App. LEXIS 3373 at *14. 





[5]
The affidavit read as follows:

1.         Your affiant is employed as a Fort
Worth Police Officer assigned to the Special Operations Division, MNICU Section
and has been employed as a police officer for over five years.  Your affiant has received numerous hours of
training in the field of narcotic and dangerous drug enforcement. 

2.         That in November of 2003, your affiant
received information that a Hispanic male by the name of Eduardo Cantu was
selling and transporting large amount[s] of cocaine in the City of Fort Worth. 

3.         That your affiant identified the
suspect as Eduardo Cantu, a Hispanic male, date of birth 05/02/69 through
Tarrant County Arrest Records and Photograph (CID# 0286563). 

4.         That on this date, November 24, 2003,
your affiant and assisting Fort Worth Police Narcotic Officers began
surveillance of the suspect.  Officers
followed the suspect to a residence at 4316 Goddard Street in Fort Worth,
Tarrant County, Texas.  This residence
has two mail boxes in front of the residence. 
One mail box displaying the numbers A4315@ and the other displaying A4318.@
That through Tarrant County Tax records, this shows to be one residence. 

5.         That on this date, officers observed
the suspect driving a 2000 Ford Taurus bearing Texas LP# G89CWH arrive at this
location and pull into the driveway and continue into the backyard of this
residence.  Officers then observed the
suspect enter a small shed in the backyard of this residence. 

6.         After approximately 5 minutes, your
affiant was advised by surveillance officers that the suspect exited the metal
shed with an object in his right hand and immediately threw it into the
backseat, as he looked around very nervous. 

7.         Surveillance officers then followed the
suspect away from the residence.  Upon
the suspect approaching the intersection at Goddard and N. Beach, the suspect
failed to utilize his right turn signal. 
Fort Worth Patrol Officer R. Dellossantos then initiated a traffic stop
due to this traffic offense at 2000 N. Beach Street in Fort Worth, Tarrant County,
Texas. 

8.         Officer Dellossantos then made contact
with the suspect and positively identified the suspect as Eduardo Cantu.  Officer Dellossantos then received written
consent from the suspect to search his vehicle. 
Upon searching the back left portion of the backseat, Officer
Dellossantos located a[n] Exhibit # 1 (brown paper sack, containing three brick
like objects, believed to contain cocaine) on the floor board of the vehicle. 

9.         The suspect was then placed under
arrest for Possession of C/S With Intent to Deliver over 400 grams. 

10.       Surveillance officers then returned to
the residence of 4316 Goddard and approached the residence and secured it to
prevent any destruction of evidence after officers heard loud banging in the
detached garage.  Officers then opened
the bay door and observed suspects Gustavo Rodriguez, a Hispanic male date of
birth 11/25/65, Elpidio Becerril, a Hispanic male date of birth 11/25/65 and
Jose M. Coronado, a Hispanic Male date of birth 02/16/79 all dis[as]sembling a
tool box on the 2000 White Ford Pickup bearing Texas LP# 7VSH10. 

11.       Your affiant has reason to believe and does believe that the
residence at 4316 Goddard and the vehicles at this location are being used to
store large amounts of cocaine.





[6]
Rodriguez, 2006 Tex. App. LEXIS 3373 at *14-15.





[7]
Henry v. United States, 361 U.S. 98, 100 (1959).  





[8]  Johnson v. United States, 333 U.S. 10,
13 (1948).





[9]  378 U.S. 108 (1964). 





[10]  Id. at 110-11 (quoting United
States v. Lefkowitz, 285 U.S. 452, 464 (1932)).





[11]
380 U.S. 102 (1965).





[12]
Id. at 106; see generally 2 Wayne
R. LaFave, Search & Seizure '
4.1(a) at 441-46 (4th ed. 2004) (discussing the jurisprudential
benefits of the warrant process).





[13]
Id. at 109; see also United States v. Leon, 468 U.S. 897,
914 (1984) (AReasonable
minds frequently may differ on the question whether a particular affidavit
establishes probable cause, and we have thus concluded that the preference for
warrants is most appropriately effectuated by according >great
deference= to a
magistrate=s
determination.@); United
States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993) (AWhen faced with a challenge to a
magistrate=s
probable cause determination, a reviewing court must remember that its role is
limited.@  Although reviewing court is not a rubber
stamp, A>the resolution of doubtful or
marginal cases in this area should be largely determined by the preference to
be accorded to warrants.=@) (citation omitted).





[14]
See Illinois v. Gates, 462 U.S. 213, 236 (1983) (AIf
the affidavits submitted by police officers are subjected to the type of
scrutiny some courts have deemed appropriate, police might well resort to
warrantless searches, with the hope of relying on consent or some other
exception to the Warrant Clause that might develop at the time of the search.@); see also Ornelas v. United States, 517 U.S. 690, 699 (1996) (AThe Fourth Amendment demonstrates a >strong preference for searches
conducted pursuant to a warrant,=
and the police are more likely to use the warrant process if the scrutiny
applied to a magistrate=s
probable-cause determination to issue a warrant is less than that for
warrantless searches. Were we to eliminate this distinction, we would eliminate
the incentive.@)
(citation omitted).





[15]  U.S. Const.
amend. IV (AThe right
of the people to be secure in their persons, houses, papers, and effects,
against unreasonable searches and seizures, shall not be violated, and no
Warrants shall issue, but upon probable cause, supported by Oath or
affirmation, and particularly describing the place to be searched, and the
persons or things to be seized.@);
Tex. Const. art. I, ' 9 (AThe
people shall be secure in their persons, houses, papers and possessions, from
all unreasonable seizures or searches, and no warrant to search any place, or
to seize any person or thing, shall issue without describing them as near as
may be, nor without probable cause, supported by oath or affirmation.@).





[16]  769 S.W.2d 887 (Tex. Crim. App. 1989).





[17]  Bower, 769 S.W.2d at 902 (citing Illinois
v. Gates, 462 U.S. 213 (1983)).  We
have defined substantial basis as not a Astandard[]
such as proof beyond a reasonable doubt or by a preponderance of the evidence.@ 
Johnson v. State, 803 S.W.2d 272, 288 (Tex. Crim. App. 1990).





[18]  Massachusetts v. Upton, 466 U.S. 727, 733
(1984); see also Ramos v. State, 934 S.W.2d 358, 363 (Tex. Crim. App.
1996) (stating that Aallegations
are sufficient if they would >justify
a conclusion that the object of the search is probably on the premises=@).






[19]  Johnson, 803 S.W.2d at 288.  Probable cause Aexists
where the facts submitted to the magistrate are sufficient to justify a
conclusion that the object of the search is probably on the premises to be
searched at the time the warrant is issued.@  Cassias v. State, 719 S.W.2d 585,
587-88 (Tex. Crim. App. 1986); Ventresca, 380 U.S. at 107  (AWhile
a warrant may issue only upon a finding of >probable
cause,= this
Court has long held that the term >probable
cause=. . .
means less than evidence which would justify condemnation@) (some internal quotations omitted).





[20]
Illinois v. Gates, 462 U.S. 213, 238 (1983).





[21]
40 George W. Dix & Robert O. Dawson,
Texas Practice: Criminal Practice and Procedure '
5.03 at 292 (2d ed. 2001) (AAlmost
certainly, for example, fair probability does not require information that
would persuade a reasonable person that the matter is more likely than not.@). 
For example, if two people are seen holding smoking guns and there is a
dead body between them with a single bullet through the heart, Officer Obie Acould have probable cause to believe
that both of the two suspects are guilty and hence subject to arrest.@ 
Id.  See generally
Maryland v. Pringle, 540 U.S. 366 (2003) (finding probable cause to arrest
all three men in a car in which baggies of cocaine were found beneath the
backseat armrest because the baggies were accessible to all three men and could
have been possessed by one or two or three acting as parties); see generally
2 Wayne R. LaFave, Search & Seizure ' 3.2(e) at 66-91 (4th ed.
2004) (discussing the degree of probability necessary to establish probable
cause under various hypotheticals and arguing that, in some situations, it
should be more-likely-then-not while in others a less then 50% probability may
suffice).





[22]  Johnson v. State, 803 S.W.2d at 288.





[23]  Id. (quoting Gates, 462 U.S. at
238-39).





[24]
Gates, 462 U.S. at 236 (noting Athat
after-the-fact scrutiny by courts of the sufficiency of an affidavit should not
take the form of a de novo review. 
A magistrate=s >determination of probable cause
should be paid great deference by reviewing courts.=@); Swearingen v. State, 143
S.W.3d 808, 810-11 (Tex. Crim. App. 2004). 





[25]
See Gates, 462 U.S. at 240; see also Ventresca, 380 U.S.
at 108 (AIf the
teachings of the Court=s
cases are to be followed and the constitutional policy served, affidavits for
search warrants, such as the one involved here, must be tested and interpreted
by magistrates and courts in a commonsense and realistic fashion. They are
normally drafted by nonlawyers in the midst and haste of a criminal
investigation. Technical requirements of elaborate specificity once exacted
under common law pleadings have no proper place in this area. A grudging or
negative attitude by reviewing courts toward warrants will tend to discourage
police officers from submitting their evidence to a judicial officer before
acting.@); see
also Cassias v. State, 719 S.W.2d at 588 (AA
search warrant affidavit must be read in a commonsense and realistic manner,
and reasonable inferences may be drawn from the facts and circumstances
contained within its four corners.@).






[26]  202 S.W.3d 149 (Tex. Crim. App. 2006).





[27]
 Id. at 150-52.





[28]  Id. 





[29]  Id. at 153.





[30]
 Id. at 157.  We wrote, AIt
is not unreasonable to infer that when a person identifies a smell by
association, he has encountered that odor-causing agent before.  This is especially so when that person may
reasonably be expected to have had some experience with that kind of odor.@ 
Id.





[31]
Id. 





[32]
Rodriguez, 2006 Tex. App. LEXIS 3373 at *14.  The court of appeals also noted that the
affidavit did not contain facts describing (1) how or from whom the affiant
received information that Cantu was a drug trafficker; (2) the neighborhood or
area where Cantu was selling cocaine; (3) suspicious activity around the house;
(4) whether the garage was in a high-crime area or whether there was frequent
drug activity there; or (5) whether the officers securing the garage saw
anything inside that would give rise to an inference that large amounts of
cocaine were being stored within it.  Id.
at *14-15.





[33]
Although it appears from the trial testimony that the affiant had been told,
before he left to obtain the warrant, that Cantu said that there were ten more
kilos of cocaine in the garage, the affiant, in his haste to obtain the
warrant, may have simply forgotten to include this information in his
affidavit.  See Ventresca, 380
U.S. at 108 (noting that affidavits Aare
normally drafted by nonlawyers in the midst and haste of a criminal
investigation. Technical requirements of elaborate specificity once exacted
under common law pleadings have no proper place in this area.@). 
Nonetheless, this fact was omitted and thus cannot be considered in
deciding whether the magistrate properly concluded that there was a Afair probability@
that additional cocaine would be found in the garage.





[34]
See Gates, 462 U.S. 235-36 (quoting Ventresca and relying, in
part, upon Athe
informal, often hurried context@
in which police officers must draft their affidavits, to reject the legalistic Atwo-pronged@
Spinelli test for search warrant affidavits based upon a confidential
informant=s tip).





[35]  Davis, 202 S.W.3d at 156.





[36]
And no such package was mentioned by any witness at the motion to suppress
hearing or at trial.





[37]  Gates, 462 U.S. at 232.