

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00438-CR

MINO TURNBOW                                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

----------

Appellant Mino Turnbow appeals his conviction for felony driving while intoxicated (DWI).  We affirm.

On a Saturday night, Lake Dallas Police Officer William Soye pulled over a white pickup truck for the traffic offense of turning without signaling.  Officer Soye approached the truck as Appellant exited its driver's side and stepped into a mud puddle.  When the officer asked Appellant for his driver's license and proof of

---

[1]*See* Tex. R. App. P. 47.4.

insurance, Appellant, leaning against the truck and smelling strongly of an alcoholic beverage, produced an expired license and a paper invoice. The officer pointed out that Appellant had handed him an invoice instead of proof of insurance, and he asked if Appellant was okay. Appellant replied that he was not okay, that he had been out with friends. The officer asked again for proof of insurance, to which Appellant replied, "I know I've been drinking, but I've been out with some friends."

Suspecting that Appellant was intoxicated, Officer Soye administered the horizontal gaze nystagmus test (HGN). Appellant exhibited five out of six clues of intoxication on the HGN. The officer then had Appellant attempt the walk-and-turn test. On that test, Appellant displayed eight out of eight clues of intoxication. Because Appellant seemed unsteady on his feet—he had swayed during the HGN and had stumbled on the walk and turn—Officer Soye did not have him attempt the one-leg stand, fearing that it would be unsafe to do so. Instead, he asked Appellant to recite the alphabet from "E" to "X." Appellant started with the letter "A" and continued to the letter "Z." Finally, Officer Soye had Appellant perform the "Romberg test," an exercise that involves touching the thumb to each finger in sequence. Appellant was unable to perform this test according to the officer's instructions.

Officer Soye concluded that Appellant had lost the normal use of his mental or physical capabilities due to having consumed alcohol, and he arrested him for DWI.

2

During the book-in process at the jail, Officer Soye learned from dispatch that Appellant had prior DWI convictions, which raised the instant offense to a felony. He asked Appellant to submit a breath sample for testing, but Appellant refused. At that point, Officer Soye decided to get a warrant for a sample of Appellant's blood.

After obtaining the warrant, Officer Soye drove Appellant to Denton Regional Medical Center, where phlebotomist Tara Okeola withdrew a sample of Appellant's blood for analysis. The sample was later forwarded to the Department of Public Safety Crime Lab in Garland, where chemist Andrew Macey measured its alcohol concentration at 0.26 grains of alcohol per 100 milliliters of blood—more than three times the legal limit.

A grand jury indicted Appellant for felony DWI. Ten days before trial, Appellant requested technical documentation related to the DPS lab's analysis of his blood specimen. Six days before trial, the State responded by providing Appellant with approximately 280 pages of documents. On the day of trial, Appellant filed a written, unsworn motion for continuance asking for thirty more days to review the documents and to hire an expert to assist him. The trial court denied the motion for continuance; the trial went forward; the jury convicted and assessed punishment at thirty-eight years' confinement; and the trial court sentenced Appellant accordingly.

## 0Motion for Continuance

In his first issue, Appellant contends that the trial court abused its discretion by denying his motion for continuance filed on the day of trial. Ten days before trial, Appellant had requested discovery documents that the State supplied within four days of the request. On the day of trial, Appellant filed a written, but unsworn motion for continuance asking for a month to review the documents and to hire an expert to assist his review.

The Texas Code of Criminal Procedure provides that all motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance. Tex. Code Crim. Proc. Ann. art. 29.08 (Vernon 2009); *Dewberry v. State*, 4 S.W.3d 735, 755–56 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000); *see Montoya v. State*, 810 S.W.2d 160, 176 (Tex. Crim. App.), *cert. denied*, 502 U.S. 961 (1991). Because Appellant's motion for continuance is unsworn, the trial court did not abuse its discretion by denying it. We overrule Appellant's first issue.

## Blood Test Results

In his next two issues, Appellant challenges the trial court's denial of his motions to suppress evidence of the blood test results. First, he claims that the results should have been suppressed because the blood-draw warrant was defective in that its supporting affidavit did not provide a substantial basis for the magistrate to find probable cause.

4

***Sufficiency of the Warrant Affidavit***

When the government draws a blood specimen to determine a suspect's blood alcohol concentration, it performs a "search" under the Fourth Amendment. *See Schmerber v. California*, 384 U.S. 757, 770 (1966); *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002). A warrant satisfies the Fourth Amendment so long as its supporting affidavit provides the issuing magistrate with a substantial basis for finding probable cause. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). An affidavit for a search warrant provides the magistrate with a substantial basis for finding probable cause when it recites facts and circumstances known by the officer from a trustworthy source that would justify a person of reasonable caution in the belief that a crime has been committed and that evidence of the crime may presently be located in the place to be searched at the time the warrant is issued. *See Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); *Ferguson v. State*, 573 S.W.2d 516, 520 (Tex. Crim. App. 1978), *cert. denied*, 442 U.S. 934 (1979). In assessing the sufficiency of a search warrant affidavit, we limit our review to the four corners of the affidavit. *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App.), *cert. denied*, 543 U.S. 944 (2004); *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 921 (1993). We interpret the affidavit in a commonsense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences. *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App.

2006); *Hankins*, 132 S.W.3d at 388; *see Rodriguez v. State*, 232 S.W.3d 55, 61–64 (Tex. Crim. App. 2007).

The affidavit in this case states:

> On Saturday 12/27/08 at approximately 2235 hours, I Officer Soye #249, observed a white Chevy pickup . . . fail to signal when turning off E Hundley Dr on to Gotcher. . . .   After my light came on I observed the vehicle swerve, slow down[,] stop[,] and then pull ahead again to another location farther down Gotcher.  I made contact with the driver, identified by TX DL . . . [as Appellant] . . . .  While talking to [Appellant] I could smell a strong odor of an alcoholic beverage emitting for [sic] his breath and/or person.  I asked him if [he] was drinking and he said "Yes I had three or four beers at the American Legion.["]   I performed the Standardized Field Sobriety Test's. [sic]  I observed 5 out of 6 clues in [HGN].  I performed the Nine Step Walk and Turn and I observed 8 out of 8 clues.  I attempted to perform the One Leg Stand but was unable to due to his unstableness.  I performed the ABC's and he could not recite from letter E to X.  I performed the finger count and he could not perform.  I read the DIC 24 to [Appellant] and he refused to provide a specimen.  I determined [Appellant] was operating a motor vehicle in a public place while intoxicated.

Appellant contends that nothing within the four corners of the affidavit established that he might have been intoxicated.  Read in a commonsense and realistic manner, however, the officer's observations reported in the affidavit—Appellant's truck's swerving, strong odor of alcohol on his breath, admission that he had consumed "three or four beers," performance on the field sobriety tests, and refusal to submit to breath testing—would lead a person of reasonable caution to infer that Appellant had been driving while intoxicated and that his blood would contain evidence to that effect.  *See Davis*, 202 S.W.3d at 154; *Cassias*, 719 S.W.2d at 587; *Tex. Dep't of Pub. Safety v. Cortinas*, 996 S.W.2d

6

885, 888–89 (Tex. App.—Houston [14th Dist.] 1998, no pet.). We hold, therefore, that the affidavit provided the magistrate with a substantial basis for finding probable cause and that the trial court did not err by denying Appellant's motion to suppress on the ground that the warrant was defective. *See Gates*, 462 U.S. at 238, 103 S. Ct. at 2332; *Cortinas*, 996 S.W.2d at 888–89. Accordingly, we overrule Appellant's second issue.

### *Phlebotomist*

Next, Appellant contends that the trial court erred by not suppressing the blood test results because the phlebotomist did not possess a license by the State of Texas to draw blood. In short, he argues in his third issue that the phlebotomist was not qualified because she was not certified.

We know of no authority for excluding from evidence the results of analyses performed on blood specimens drawn by phlebotomists who do not possess licenses issued by the State. Appellant notes that his trial counsel cited our opinion in *State v. Johnston*, 305 S.W.3d 746 (Tex. App.—Fort Worth, 2009, pet. granted), for such a proposition, but *Johnston* does not support Appellant's contention; moreover, Appellant does not argue with any force that it does.

What we did observe in *Johnston* was that the Fourth Amendment requires that once the police obtain a valid warrant for blood, the subsequent search must be reasonable. *Id*. at 752 (*citing Beeman*, 86 S.W.3d at 615–16). We review de novo whether a blood draw was reasonable by examining the totality of the

circumstances. *Id*. at 753 (citing *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004)).

Our review of the totality of the circumstances as set out in the record shows that the blood draw in this case was reasonable. Appellant was taken to a sanitary room in a hospital, where a phlebotomist, who had been employed as such by the hospital for four years, had sixteen years' experience, and had performed over 50,000 blood draws, sterilized Appellant's arm with soap and water, and collected a sample of his blood into a sealed blood sample kit provided by the officer. Because we see nothing in the record to suggest that the blood draw under these circumstances was unreasonable, the trial court did not err by denying Appellant's motion to suppress on the grounds that the phlebotomist was not properly certified. *See State v. Bingham*, 921 S.W.2d 494, 496 (Tex. App.—Waco 1996, pet. ref'd). Accordingly, we overrule Appellant's third issue.

### Evidence Sufficiency

Appellant's fourth and fifth issues are challenges to the legal and factual sufficiency of the evidence to support his conviction. Because the court of criminal appeals has recently overruled *Clewis*, we review Appellant's sufficiency of the evidence claims under the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6, 2010).

8

***Prior DWI Conviction***

In issue four, Appellant claims that the State failed to prove one of the two prior DWI convictions it had alleged to raise the offense to a felony. Specifically, he contends that one of these priors was not proven beyond a reasonable doubt because the judgment from that case did not have Appellant's fingerprint on it.

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); *Paschall v. State*, 285 S.W.3d 166, 174 (Tex. App.—Fort Worth, 2009, pet. ref'd). No specific document or mode of proof is required to prove these two elements. *Flowers*, 220 S.W.3d at 921. There is no "best evidence" rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document. *Id.* While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *Id*. at 921–22 (citations omitted).

Ordinarily, the proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles a jigsaw puzzle. *Human v. State*, 749 S.W.2d 832, 835–36 (Tex. Crim. App. 1988) (op. on reh'g). The pieces standing alone usually have little meaning. *Id.* at 836. However, when the pieces are fitted together, they usually form the picture of the person with the alleged prior conviction or convictions. *Id.*

The trier of fact fits the pieces of the jigsaw puzzle together and weighs the credibility of each piece. *Flowers*, 220 S.W.3d at 923. Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle. *Id*. The trier of fact looks at the totality of the evidence admitted to determine (1) whether there was a previous conviction, and (2) whether the defendant was the person convicted. If these two elements can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily sufficient to prove a prior conviction. *Id.*

In this case, the jury, as the trier of fact, had before it all the pieces of the jigsaw puzzle needed to determine beyond a reasonable doubt that Appellant had been previously convicted of DWI as alleged in the indictment. The indictment alleged that Appellant had previously been convicted of DWI on June 21, 1989, in the County Court at Law Number One of Wichita County, Texas, in

10

cause number 07-1350-10419. State's Exhibit 10 is a certified copy of a judgment and order of probation in *The State of Texas v. Mino Scott Turnbow*, cause number 07-1350-10419, from the County Court at Law Number One of Wichita County. Although there is a place for a fingerprint on State's Exhibit 10, the State's fingerprint expert, Denton County Sheriff's Office Investigator Larry Kish testified that the exhibit does not display an identifiable print.

Investigator Kish, however, also testified that, in the morning before that day's testimony, he personally took Appellant's fingerprints in the courtroom on a ten-print card which was admitted as State's Exhibit 9. State's Exhibit 11 is a certified copy of a May 24, 1990 order modifying probation in cause number 07-1350-10419, styled *The State of Texas v. Mino Scott Turnbow*, out of Wichita County's County Court at Law Number One. A fingerprint was displayed on State's Exhibit 11, which Investigator Kish identified as Appellant's.

The trial court also admitted State's Exhibit 13, a certified DPS driving packet showing the driving record of "Mino Scott Turnbow." It references a DWI conviction in Wichita County's County Court at Law on June 21, 1989, with a docket number ending in 10419. Included in State's Exhibit 13 is a driver's license photograph which Investigator Kish identified as Appellant. In addition, the jury could compare the photograph on State's Exhibit 13 with Appellant who was present in the courtroom during trial.

Viewed in the light most favorable to the verdict, we hold that the evidence is sufficient to support the jury's finding implied by their verdict that Appellant had

11

previously been convicted of DWI as alleged in the indictment. Accordingly, we overrule Appellant's fourth issue. *See Flowers*, 220 S.W.3d at 925.

### *Evidence of Intoxication*

In issue five, Appellant contends that the evidence is insufficient to prove that he was intoxicated while he was driving. Viewed in the light most favorable to the verdict, the record shows that Officer Soye pulled Appellant over for a traffic violation; that, after stepping in a mud puddle, Appellant leaned against his pick-up truck for balance; that he smelled strongly of an alcoholic beverage; that he admitted that he had been drinking; that he produced the wrong papers—an invoice—when asked for proof of insurance; that, when asked if he was okay, he said "No, I'm not okay, I've been out with some friends;" that Officer Soye observed five out of six clues of intoxication on the HGN; that Appellant displayed all eight clues of intoxication on the walk-and-turn test; that he was too unsteady for Officer Soye to consider it safe for him to perform the one-leg-stand test; that he was unable to perform other tests; that he admitted that he was drunk; that he refused a breath test; that Officer Soye believed that Appellant had lost the normal use of his physical and mental faculties due to the introduction of alcohol; and that Appellant's blood tested positive for alcohol at a concentration over three times the legal limit. In addition, the jury viewed the videotape taken of the stop and the arrest. We hold that the evidence is sufficient for a rational jury to find that Appellant was intoxicated while he was driving, and we overrule Appellant's fifth issue.

**Enhancement**

In issue six, Appellant complains that the judgment of the trial court indicates on its face that Texas Penal Code § 12.42 enhancement is not available. The record shows, however, that the trial court issued a judgment nunc pro tunc remedying the error of which Appellant complains in this issue. Accordingly, we overrule Appellant's sixth issue as moot.

**Conclusion**

Having overruled all of Appellant's issues, we affirm the judgment of the trial court.

PER CURIAM

PANEL: GABRIEL, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 10, 2010