02-09-438-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00438-CR 

 

 


 
 
 Mino Turnbow
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE
16th District Court OF Denton
COUNTY

------------

MEMORANDUM
OPINION[1]

----------

          Appellant Mino Turnbow
appeals his conviction for felony driving while intoxicated (DWI).  We affirm.

On a
Saturday night, Lake Dallas Police Officer William Soye
pulled over a white pickup truck for the traffic offense of turning without
signaling.  Officer Soye
approached the truck as Appellant exited its driver’s side and stepped into a
mud puddle.  When the officer asked
Appellant for his driver’s license and proof of insurance, Appellant, leaning
against the truck and smelling strongly of an alcoholic beverage, produced an
expired license and a paper invoice.  The
officer pointed out that Appellant had handed him an invoice instead of proof
of insurance, and he asked if Appellant was okay.  Appellant replied that he was not okay, that
he had been out with friends.  The
officer asked again for proof of insurance, to which Appellant replied, “I know
I’ve been drinking, but I’ve been out with some friends.”

          Suspecting that Appellant was intoxicated, Officer Soye
administered the horizontal gaze nystagmus test (HGN).  Appellant exhibited five out of six clues of
intoxication on the HGN.  The officer
then had Appellant attempt the walk-and-turn test.  On that test, Appellant displayed eight out
of eight clues of intoxication.  Because
Appellant seemed unsteady on his feet––he had swayed during the HGN and had
stumbled on the walk and turn––Officer Soye did not
have him attempt the one-leg stand, fearing that it would be unsafe to do
so.  Instead, he asked Appellant to
recite the alphabet from “E” to “X.” 
Appellant started with the letter “A” and continued to the letter
“Z.”  Finally, Officer Soye had Appellant perform the “Romberg test,” an exercise
that involves touching the thumb to each finger in sequence.  Appellant was unable to perform this test
according to the officer’s instructions.

          Officer Soye
concluded that Appellant had lost the normal use of his mental or physical
capabilities due to having consumed alcohol, and he arrested him for DWI.

          During the book-in process at the
jail, Officer Soye learned from dispatch that
Appellant had prior DWI convictions, which raised the instant offense to a
felony.  He asked Appellant to submit a
breath sample for testing, but Appellant refused.  At that point, Officer Soye
decided to get a warrant for a sample of Appellant’s blood.  

          After obtaining the warrant, Officer Soye drove Appellant to Denton Regional Medical Center,
where phlebotomist Tara Okeola withdrew a sample of
Appellant’s blood for analysis.  The
sample was later forwarded to the Department of Public Safety Crime Lab in
Garland, where chemist Andrew Macey measured its
alcohol concentration at 0.26 grains of alcohol per 100 milliliters of
blood––more than three times the legal limit.

          A grand jury indicted Appellant for
felony DWI.  Ten days before trial, Appellant
requested technical documentation related to the DPS lab’s analysis of his
blood specimen.  Six days before trial,
the State responded by providing Appellant with approximately 280 pages of
documents.  On the day of trial,
Appellant filed a written, unsworn motion for continuance asking for thirty
more days to review the documents and to hire an expert to assist him.  The trial court denied the motion for
continuance; the trial went forward; the jury convicted and assessed punishment
at thirty-eight years’ confinement; and the trial court sentenced Appellant
accordingly.




0Motion for Continuance

          In his first issue, Appellant contends
that the trial court abused its discretion by denying his motion for
continuance filed on the day of trial. 
Ten days before trial, Appellant had requested discovery documents that
the State supplied within four days of the request.  On the day of trial, Appellant filed a
written, but unsworn motion for continuance asking for a month to review the
documents and to hire an expert to assist his review.

          The Texas Code of Criminal Procedure
provides that all motions for continuance must be sworn to by a person having
personal knowledge of the facts relied on for the continuance.  Tex. Code Crim. Proc. Ann.
art. 29.08 (Vernon 2009); Dewberry
v. State, 4 S.W.3d 735, 755–56 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000); see Montoya v. State, 810
S.W.2d 160, 176 (Tex. Crim. App.), cert.
denied, 502 U.S. 961 (1991).  Because
Appellant’s motion for continuance is unsworn, the trial court did not abuse
its discretion by denying it.  We
overrule Appellant’s first issue.

Blood
Test Results

In
his next two issues, Appellant challenges the trial court’s denial of his
motions to suppress evidence of the blood test results.  First, he claims that the results should have
been suppressed because the blood-draw warrant was defective in that its
supporting affidavit did not provide a substantial basis for the magistrate to
find probable cause.




Sufficiency
of the Warrant Affidavit

          When the government draws a blood
specimen to determine a suspect’s blood alcohol concentration, it performs a
“search” under the Fourth Amendment.  See Schmerber v.
California, 384 U.S. 757, 770 (1966); Beeman v. State, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002).  A warrant satisfies the Fourth Amendment so
long as its supporting affidavit provides the issuing magistrate with a
substantial basis for finding probable cause.  Illinois v. Gates, 462 U.S. 213, 238–39 (1983).  An affidavit for a search warrant provides
the magistrate with a substantial basis for finding probable cause when it
recites facts and circumstances known by the officer from a trustworthy source
that would justify a person of reasonable caution in the belief that a crime
has been committed and that evidence of the crime may presently be located in
the place to be searched at the time the warrant is issued.  See
Cassias v. State, 719 S.W.2d 585, 587
(Tex. Crim. App. 1986); Ferguson v. State,
573 S.W.2d 516, 520 (Tex. Crim. App. 1978), cert.
denied, 442 U.S. 934 (1979).  In
assessing the sufficiency of a search warrant affidavit, we limit our review to
the four corners of the affidavit.  Hankins v. State, 132 S.W.3d 380, 388
(Tex. Crim. App.), cert. denied, 543
U.S. 944 (2004); Jones v. State, 833
S.W.2d 118, 123 (Tex. Crim. App. 1992), cert.
denied, 507 U.S. 921 (1993).  We
interpret the affidavit in a commonsense and realistic manner, recognizing that
the magistrate was permitted to draw reasonable inferences.  Davis
v. State, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006); Hankins, 132 S.W.3d at 388; see
Rodriguez v. State, 232 S.W.3d 55, 61–64 (Tex. Crim. App. 2007). 

The
affidavit in this case states:

On Saturday 12/27/08
at approximately 2235 hours, I Officer Soye #249,
observed a white Chevy pickup . . . fail to signal when turning off E Hundley
Dr on to Gotcher. . . .  After my
light came on I observed the vehicle swerve, slow down[,]
stop[,] and then pull ahead again to another location farther down Gotcher.  I made
contact with the driver, identified by TX DL . . . [as Appellant] . . . .  While talking to [Appellant] I could smell a
strong odor of an alcoholic beverage emitting for [sic] his breath and/or
person.  I asked him if [he] was drinking
and he said “Yes I had three or four beers at the American Legion.[”]  I performed the
Standardized Field Sobriety Test’s. [sic]  I observed 5 out of 6 clues in [HGN].  I performed the Nine Step Walk and Turn and I
observed 8 out of 8 clues.  I attempted
to perform the One Leg Stand but was unable to due to his unstableness.  I performed the ABC’s and he could not recite
from letter E to X.  I performed the
finger count and he could not perform.  I
read the DIC 24 to [Appellant] and he refused to provide a specimen.  I determined [Appellant] was operating a
motor vehicle in a public place while intoxicated.  

 

          Appellant contends that nothing within
the four corners of the affidavit established that he might have been
intoxicated.  Read in a commonsense and
realistic manner, however, the officer’s observations reported in the
affidavit––Appellant’s truck’s swerving, strong odor of alcohol on his breath,
admission that he had consumed “three or four beers,” performance on the field
sobriety tests, and refusal to submit to breath testing––would lead a person of
reasonable caution to infer that Appellant had been driving while intoxicated
and that his blood would contain evidence to that effect.  See
Davis, 202 S.W.3d at 154; Cassias,
719 S.W.2d at 587; Tex.
Dep’t of Pub. Safety v. Cortinas, 996 S.W.2d 885, 888–89 (Tex. App.—Houston [14th
Dist.] 1998, no pet.). 
We hold, therefore, that the affidavit provided the magistrate with a
substantial basis for finding probable cause and that the trial court did not
err by denying Appellant’s motion to suppress on the ground that the warrant
was defective.  See Gates, 462 U.S. at 238, 103 S. Ct. at 2332; Cortinas, 996 S.W.2d at 888–89.  Accordingly, we overrule Appellant’s second
issue.

Phlebotomist

Next,
Appellant contends that the trial court erred by not suppressing the blood test
results because the phlebotomist did not possess a license by the State of
Texas to draw blood.  In short, he argues
in his third issue that the phlebotomist was not qualified because she was not
certified.

          We know of no authority for excluding
from evidence the results of analyses performed on blood specimens drawn by
phlebotomists who do not possess licenses issued by the State.  Appellant notes that his trial counsel cited
our opinion in State v. Johnston, 305
S.W.3d 746 (Tex. App.—Fort Worth, 2009, pet. granted), for such a proposition,
but Johnston does not support
Appellant’s contention; moreover, Appellant does not argue with any force that
it does.

          What we did observe in Johnston was that the Fourth Amendment
requires that once the police obtain a valid warrant for blood, the subsequent
search must be reasonable.  Id. at 752 (citing Beeman,
86 S.W.3d at 615–16). 
We review de novo whether a blood draw was reasonable by examining the
totality of the circumstances.  Id. at 753 (citing Kothe v. State, 152 S.W.3d 54, 62–63 (Tex.
Crim. App. 2004)).  

          Our review of the totality of the
circumstances as set out in the record shows that the blood draw in this case
was reasonable.  Appellant was taken to a
sanitary room in a hospital, where a phlebotomist, who had been employed as
such by the hospital for four years, had sixteen years’ experience, and had
performed over 50,000 blood draws, sterilized Appellant’s arm with soap and
water, and collected a sample of his blood into a sealed blood sample kit
provided by the officer.  Because we see
nothing in the record to suggest that the blood draw under these circumstances
was unreasonable, the trial court did not err by denying Appellant’s motion to
suppress on the grounds that the phlebotomist was not properly certified.  See State v. Bingham, 921 S.W.2d 494, 496 (Tex. App.—Waco 1996,
pet. ref’d). 
Accordingly, we overrule Appellant’s third issue.

Evidence
Sufficiency

          Appellant’s fourth and fifth issues
are challenges to the legal and factual sufficiency of the evidence to support
his conviction.  Because the court of
criminal appeals has recently overruled Clewis, we review Appellant’s sufficiency of the evidence
claims under the standard set out in Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see Brooks v. State, No. PD-0210-09,
2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6, 2010).




Prior
DWI Conviction 

          In issue four, Appellant claims that
the State failed to prove one of the two prior DWI convictions it had alleged to
raise the offense to a felony. 
Specifically, he contends that one of these priors was not proven beyond
a reasonable doubt because the judgment from that case did not have Appellant’s
fingerprint on it.

          To establish that a defendant has been
convicted of a prior offense, the State must prove beyond a reasonable doubt
that (1) a prior conviction exists, and (2) the defendant is linked to that
conviction.  Flowers v. State, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); Paschall v. State, 285 S.W.3d 166, 174 (Tex.
App.—Fort Worth, 2009, pet. ref’d).  No specific document or mode of proof is
required to prove these two elements.  Flowers, 220 S.W.3d at
921.  There is no “best evidence” rule in Texas
that requires that the fact of a prior conviction be proven with any document,
much less any specific document.  Id. 
While evidence of a certified copy of a final judgment and sentence may
be a preferred and convenient means, the State may prove both of these elements
in a number of different ways, including (1) the defendant’s admission or stipulation, (2) testimony by a person who was
present when the person was convicted of the specified crime and can identify
the defendant as that person, or (3) documentary proof (such as a judgment)
that contains sufficient information to establish both the existence of a prior
conviction and the defendant’s identity as the person convicted.  Id. at 921–22 (citations
omitted).

          Ordinarily, the proof that is adduced
to establish that the defendant on trial is one and the same person that is
named in an alleged prior criminal conviction or convictions closely resembles
a jigsaw puzzle.  Human v. State, 749 S.W.2d 832, 835–36
(Tex. Crim. App. 1988) (op. on reh’g).  The pieces standing alone usually have little
meaning.  Id. at 836.  However, when the pieces are fitted together,
they usually form the picture of the person with the alleged prior conviction
or convictions.  Id.

          The trier of
fact fits the pieces of the jigsaw puzzle together and weighs the credibility
of each piece.  Flowers, 220 S.W.3d at 923.  Regardless of the type of evidentiary puzzle
pieces the State offers to establish the existence of a prior conviction and
its link to a specific defendant, the trier of fact
determines if these pieces fit together sufficiently to complete the puzzle. Id. 
The trier of fact looks at the totality of the
evidence admitted to determine (1) whether there was a previous conviction, and
(2) whether the defendant was the person convicted.  If these two elements can be found beyond a
reasonable doubt, then the various pieces used to complete the puzzle are
necessarily sufficient to prove a prior conviction.  Id.

          In this case, the jury, as the trier of fact, had before it all the pieces of the jigsaw
puzzle needed to determine beyond a reasonable doubt that Appellant had been
previously convicted of DWI as alleged in the indictment.  The indictment alleged that Appellant had
previously been convicted of DWI on June 21, 1989, in the County Court at Law
Number One of Wichita County, Texas, in cause number 07-1350-10419.  State’s Exhibit 10 is a certified copy of a
judgment and order of probation in The
State of Texas v. Mino Scott Turnbow, cause
number 07-1350-10419, from the County Court at Law Number One of Wichita
County.  Although there is a place for a
fingerprint on State’s Exhibit 10, the State’s fingerprint expert, Denton
County Sheriff’s Office Investigator Larry Kish testified that the exhibit does
not display an identifiable print.  

          Investigator Kish, however, also
testified that, in the morning before that day’s testimony, he personally took
Appellant’s fingerprints in the courtroom on a ten-print card which was
admitted as State’s Exhibit 9.  State’s
Exhibit 11 is a certified copy of a May 24, 1990 order modifying probation in
cause number 07-1350-10419, styled The
State of Texas v. Mino Scott Turnbow, out of
Wichita County’s County Court at Law Number One.  A fingerprint was displayed on State’s
Exhibit 11, which Investigator Kish identified as Appellant’s.

          The trial court also admitted State’s
Exhibit 13, a certified DPS driving packet showing the driving record of “Mino
Scott Turnbow.” 
It references a DWI conviction in Wichita County’s County Court at Law
on June 21, 1989, with a docket number ending in 10419.  Included in State’s Exhibit 13 is a driver’s
license photograph which Investigator Kish identified as Appellant.  In addition, the jury could compare the
photograph on State’s Exhibit 13 with Appellant who was present in the
courtroom during trial.

          Viewed in the light most favorable to
the verdict, we hold that the evidence is sufficient to support the jury’s
finding implied by their verdict that Appellant had previously been convicted
of DWI as alleged in the indictment. 
Accordingly, we overrule Appellant’s fourth issue.  See
Flowers, 220 S.W.3d at 925.

Evidence
of Intoxication

          In issue five, Appellant contends that
the evidence is insufficient to prove that he was intoxicated while he was
driving.  Viewed in the light most
favorable to the verdict, the record shows that Officer Soye
pulled Appellant over for a traffic violation; that, after stepping in a mud
puddle, Appellant leaned against his pick-up truck for balance; that he smelled
strongly of an alcoholic beverage; that he admitted that he had been drinking;
that he produced the wrong papers—an invoice—when asked for proof of insurance;
that, when asked if he was okay, he said “No, I’m not okay, I’ve been out with
some friends;” that Officer Soye observed five out of
six clues of intoxication on the HGN; that Appellant displayed all eight clues
of intoxication on the walk-and-turn test; that he was too unsteady for Officer
Soye to consider it safe for him to perform the
one-leg-stand test; that he was unable to perform other tests; that he admitted
that he was drunk; that he refused a breath test; that Officer Soye believed that Appellant had lost the normal use of his
physical and mental faculties due to the introduction of alcohol; and that
Appellant’s blood tested positive for alcohol at a concentration over three
times the legal limit.  In addition, the
jury viewed the videotape taken of the stop and the arrest.  We hold that the evidence is sufficient for a
rational jury to find that Appellant was intoxicated while he was driving, and
we overrule Appellant’s fifth issue.

Enhancement

          In issue six, Appellant complains that
the judgment of the trial court indicates on its face that Texas Penal Code §
12.42 enhancement is not available.  The
record shows, however, that the trial court issued a judgment nunc pro tunc remedying the error
of which Appellant complains in this issue. 
Accordingly, we overrule Appellant’s sixth issue as moot.

Conclusion

          Having overruled all of Appellant’s issues, we affirm the
judgment of the trial court.

 

PER CURIAM

 

PANEL:  GABRIEL, GARDNER, and WALKER,
JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  November 10, 2010











[1]See Tex. R. App. P. 47.4.