**Affirmed and Opinion Filed March 13, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-01107-CR
### No. 05-22-01108-CR

**THE STATE OF TEXAS, Appellant**
**V.**
**XAVIER GARCIA, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F21-33069-T and F21-33070-T**

## MEMORANDUM OPINION

Before Justices Nowell, Miskel, and Kennedy
Opinion by Justice Miskel

The State of Texas appeals the trial court's order granting appellant Xavier

Garcia's motion to suppress evidence obtained pursuant to a search warrant. In its

sole issue, the State argues that the trial court committed reversible error in granting

the motion because the affidavit supporting the search warrant contained sufficient

facts to establish probable cause for the magistrate to issue the warrant. We conclude

that the trial court did not err in granting the motion to suppress and affirm the trial

court's order.

# I.     Background

The Irving Police Department received information that the occupants of a residence located at 3307 Herring Avenue, Irving, Dallas County, Texas, were possibly selling narcotics from this location. After conducting physical surveillance, the police department sought a warrant to search the premises, including a house, a travel trailer, and other specified vehicles. The police department also sought to arrest three individuals who allegedly lived at the premises, including Garcia. In support of its warrant application, the police department attached an affidavit from Investigator E. LaCross, a police officer assigned to the Criminal Investigation Division of the Irving Police Department as a Narcotics Investigator. The affidavit alleges that cars stopped at the residence in a manner suggesting illegal drug sales. The magistrate issued a search and arrest warrant.

The next day, the police searched the premises and vehicles specified in the warrant and found methamphetamine, oxycodone, marijuana, $16,726 in cash, three handguns, one shotgun, three phones, ammunition, magazines, miscellaneous drug paraphernalia, and hemp oil. The police arrested Garcia and the two other individuals named in the affidavit.

A grand jury charged Garcia with possession with intent to deliver methamphetamine in an amount of 4 grams or more but less than 200 grams under Health & Safety Code § 481.112(d), and the State charged Garcia by indictment with

possession of marijuana in an amount of five pounds or less but more than four ounces under Health & Safety Code § 481.121(b)(3).

Garcia filed an omnibus pretrial motion in which he requested that the court suppress evidence the State recovered allegedly in violation of the United States Constitution, the Texas Constitution, or Texas law. At the end of a hearing, the trial court orally granted Garcia's motion to suppress and later signed an order. The State appealed the order under article 44.01(a)(5) of the Texas Code of Criminal Procedure. The State requested findings of fact and conclusions of law from the trial court, which the trial court issued and signed.

## II. Standard of Review and Applicable Law

Article I, § 9 of the Texas Constitution and the Fourth Amendment to the United States Constitution are the same in all material aspects. *Heitman v. State*, 815 S.W.2d 681, 682-83 (Tex. Crim. App. 1991). While state constitutions cannot subtract from the rights guaranteed by the United States Constitution, they can provide additional rights to their citizens. *Id.* at 690; *see also Holder v. State*, 595 S.W.3d 691, 702 (Tex. Crim. App. 2020); *Hankston v. State*, 517 SW3d 112, 117 (Tex. Crim. App. 2017), *vacated on other grounds due to intervening authority,* 138 S. Ct. 2706 (2018). But, generally:

> Absent some significant difference in the text of the two provisions, or some historically documented difference in attitude between the respective drafters, there would be no apparent reason to prefer an interpretation of Article I, § 9 any different than our preferred interpretation of the Fourth Amendment. We will not read Article I, §

9 differently than the Fourth Amendment in a particular context simply because we can.

*Crittenden v. State*, 899 S.W.2d 668, 682 n.8 (Tex. Crim. App. 1995).

The core of the Fourth Amendment's warrant clause and its Texas equivalent is that a magistrate may not issue a search warrant without first finding "probable cause" that a particular item will be found in a particular location. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). The test is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the affidavit provide a "substantial basis" for issuing the warrant. *Id.*

Ordinarily, appellate courts review a ruling on a motion to suppress using a bifurcated standard of review: giving almost total deference to the historical facts found by the trial court and reviewing de novo the trial court's application of the law. *Bordelon v. State*, 673 S.W.3d 775, 784 (Tex. App.—Dallas 2023, no pet.) (citing *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011)). However, when the trial court evaluates probable cause to support the issuance of a search warrant, there are no credibility determinations, and the trial court is constrained to the four corners of the affidavit. *Id.* Accordingly, we apply a highly deferential standard of review to the trial court's issuance of a warrant, given the constitutional preference for searches to be conducted pursuant to a warrant. *Id.*; *see also State v. Baldwin*, 664 S.W.3d 122, 130 (Tex. Crim. App. 2022), *cert. denied*, 143 S. Ct. 777 (2023).

The duty of a reviewing court is to ensure a magistrate had a substantial basis for concluding that probable cause existed. *Baldwin*, 664 S.W.3d at 130 (citing *Duarte*, 389 S.W.3d at 354). Reviewing courts inquire whether there are sufficient facts, coupled with inferences from those facts, to establish a fair probability, under the totality of the circumstances, that evidence of a particular crime will likely be found at a given location. *Id.*, *Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007). This is a flexible, nondemanding standard. *Baldwin*, 664 S.W.3d at 130. When in doubt, reviewing courts should defer to all reasonable inferences a magistrate could have made. *Id.* (citing *Rodriguez*, 232 S.W.3d at 61). Reviewing courts should not invalidate a warrant by interpreting an affidavit in a hyper-technical rather than commonsense manner. *Id.* (citing *McLain*, 337 S.W.3d at 271–72 and *Rodriguez*, 232 S.W.3d at 61 n.25).

Neither federal nor Texas law defines precisely what degree of probability suffices to establish probable cause, but a magistrate's action cannot be a mere ratification of the bare conclusions of others. *Duarte*, 389 S.W.3d at 354. A magistrate should not be a rubber stamp. *Id.* "In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (U.S. 1983)).

### III. No Substantial Basis for Probable Cause Determination

We must examine whether the sworn affidavit filed in support of the search warrant set forth facts sufficient to establish probable cause (1) that a specific offense was committed, (2) that the specifically described property or items to be searched for or seized constitute evidence of the offense or evidence that a particular person committed it, and (3) that the evidence sought is located at or on the person, place or thing to be searched. *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(c); *Baldwin*, 664 S.W.3d at 130.

### A. The Police Investigator's Affidavit

In his affidavit, the police investigator describes the location of the suspected residence and states that the premises were "in charge of and controlled by" each of three named individuals, including Garcia. The investigator asserts that the persons residing at the location are in possession of marijuana and oxycodone. He further describes his twelve years of law enforcement training and experience as well as his knowledge relating to drug trafficking activities. The investigator alleges:

> On January 15, 2021, your affiant received information that the occupants of 3307 Herring Avenue, Irving, Dallas County, Texas were possibly selling narcotics from this location.

> Between February 3rd and February 8th, while conducting physical surveillance at the location I observed numerous (approximately 20) narcotics transactions involving the persons listed in number 3 above.

The investigator then sets forth the following facts and observations:

> On February 4, 2021, I was conducting physical surveillance at 3307 Herring Avenue, Irving, Dallas County, Texas. While conducting

–6–

surveillance I observed Ramon Hernandez exit the listed residence. Ramon Hernandez went to the driver side door of a 2018 red Ford Mustang, bearing Texas license plate [number]. Ramon Hernandez met with the driver briefly (less than 15 seconds) and then the Ramon Hernandez returned to the residence. The driver of the red mustang left the location and investigators continued constant visual surveillance of the vehicle. [The affidavit then describes a subsequent traffic stop and search of the vehicle which resulted in the discovery of marijuana and methamphetamine paraphernalia].

On February 8, 2021, I was conducting physical surveillance at 3307 Herring Avenue, Irving, Dallas County, Texas. While doing surveillance I observed a gold 2009 Ford F-150, bearing Texas license plate [number], pull into the location. This was the third time that I had seen this same vehicle while doing surveillance at the location. Ramon Hernandez met with the occupants of the vehicle briefly and then the vehicle left the location. [The affidavit then describes a subsequent traffic stop and search of the vehicle which resulted in the discovery of two oxycodone pills].

On February 8, 2021, I was conducting physical surveillance at 3307 Herring Avenue, Irving, Dallas County, Texas. While doing surveillance I observed Ramon Hernandez exit the east gate of the residence and meet briefly with the occupants of a silver Dodge Dart, bearing Texas license plate [number]. After meeting with Ramon Hernandez the vehicle left the location. [The affidavit then describes a subsequent traffic stop and search of the vehicle which resulted in the discovery of marijuana].

## B.    The Trial Court's Findings of Facts and Conclusions of Law

In its written findings of facts and conclusions of law on Garcia's motion to suppress, the trial judge concluded that, "under the totality of the circumstances, there were insufficient facts stated within the four corners of the probable-cause affidavit, coupled with any allowable inferences from those facts, to establish a fair probability that evidence of a particular crime would be found at the premises." The trial court lists the following findings, among others:

The Court finds that the affidavit sets forth that, while conducting surveillance at the location in question, vehicles came to the location, and an individual who is not named as the defendant, came out and met with people in vehicles.

The Court finds that the affidavit sets forth that, after the people left, the police stopped the vehicles, and in each vehicle, a narcotic was found.

The Court finds that the statement in the affidavit that the affiant observed approximately twenty narcotics transactions is conclusory and not supported by the facts alleged in the warrant.

The trial court also made findings on what the affidavit did not show, as follows:

The Court finds that the affidavit is silent as to time, date, person, or mechanics of the transactions or what supposed narcotics were involved in said transactions.

The Court finds the affidavit is silent as to whether any of the occupants of the stopped vehicles were asked, or whether they stated, where they got the drugs, and whether any specific information was received from the individuals stopped.

The Court finds that the affidavit is silent as to whether any cash or drugs were seen passing from individual to individual.

The State argues that the trial court failed to properly defer to the magistrate's probable cause determination. It argues that the trial court improperly focused on what other facts could or should have been included in the affidavit rather than on the combined logical force of the facts that were in the affidavit. *See Duarte*, 389 S.W.3d at 354–55.

We do not construe the trial court's findings to be improperly focused on demanding additional facts that could have been included. Courts review an

affidavit based on the facts that it contains and reasonable inferences that the magistrate could have drawn from those facts. *See Rodriguez*, 232 S.W.3d at 62 (stating that courts should focus on "the combined logical force of facts that *are* in the affidavit, not those that are omitted from the affidavit."). The trial court's findings highlight the affidavit's lack of a basis for probable cause—the absence of facts that would support reasonable inferences.

## C. The Affidavit's Facts, Even With Reasonable Inferences, Do Not Support a Probable Cause Determination

Reviewing the four corners of the investigator's affidavit and giving deference to reasonable inferences that the magistrate could have made, we hold that the trial court did not err in concluding there was no substantial basis for the magistrate's probable cause determination.

### 1. The vague tip from an unidentified informant requires additional corroborating facts.

First, the affidavit states that the investigator "received information" that the occupants of the specified residence "were possibly selling narcotics from this location." The tip is vague and refers to possible illegal activity. The affidavit provides no information regarding the informant or this individual's reliability, credibility, or the basis of this person's knowledge. Consequently, the totality-of-the-circumstances analysis must consider whether the affidavit contains facts that corroborate the unidentified informant's tip, which could be obtained through independent police work or other means. *See Duarte*, 389 S.W.3d at 358 (stating

that "tips from anonymous or first-time confidential informants of unknown reliability must be coupled with facts from which an inference may be drawn that the informant is credible or that his information is reliable"); *see also Gates*, 462 U.S. at 244-45 ("It is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale.") (citations omitted).

> ### 2. The affidavit fails to establish a nexus between the drugs found in vehicles and the premises to be searched.

In this case, the physical surveillance described in the affidavit did not establish a substantial basis for the warrant. Although courts may draw reasonable inferences from information clearly set forth in the affidavit, material information should not be read into the affidavit that does not otherwise appear on its face. *Cassias v. State*, 719 S.W.2d 585, 590 (Tex. Crim. App. 1986).

In *Cassias*, the Texas Court of Criminal Appeals concluded that a search warrant was erroneously issued when the supporting affidavit on its face lacked material information to reasonably infer a connection between the informant's observation of appellant with narcotics and the residence at issue. *Id*. The Court determined that the officer's affidavit failed to show that drugs or evidence of a crime would be found at the residence by attesting without explanation that subjects had been seen carrying a "plastic tub with plastic tubing" into the backyard as well as "brick type packages believed to be marijuana" and by making conclusory statements that "several narcotics users" frequented the address. *Id*.

In the present case, the factual evidence of alleged narcotics transactions in the affidavit only confirms that, on one day, one vehicle pulled up to the house and that a different named individual "met briefly" with the occupants before the vehicle departed, and that the same thing happened twice on a different day. Although subsequent traffic stops revealed illegal drugs in each of the three vehicles, the affidavit does not contain facts that would allow the magistrate to reasonably infer a connection between the narcotics later found in the three vehicles and Garcia's premises, the location of the alleged criminal activity.

The two cases that the State discusses are distinguishable because the affidavits established a clearer nexus between the illegal drugs and the premises to be searched.

For example, in *Rodriguez*, officers saw the suspect go into a garage and emerge with a package. 232 S.W.3d at 57. As he looked around nervously, he threw the package into his car and drove away. *Id.* He was then stopped for a traffic violation, and officers found a brown paper sack that contained what appeared to be bricks of cocaine in the exact spot where the officers had seen him toss the package that he had taken out of the garage. *Id.* The suspect then told officers that the three kilos of cocaine in his car came from the garage and that there was more cocaine at that garage. *Id.* The Court of Criminal Appeals concluded that the magistrate could reasonably infer from these facts that the suspect obtained that package from the garage and that there was a fair probability that more cocaine might still be in that

–11–

same garage. *Id.* at 63. *Rodriguez* is distinguishable from the present case because that affidavit contained facts witnessed by the officers linking the suspect and the garage with the contraband. It was reasonable for the magistrate to infer a clear nexus between the drugs and the property to be searched.

Similarly, the State misplaces its reliance on *Flores v. State*. There, the Court of Criminal Appeals upheld a warrant where an informant's tip was corroborated by the officer twice finding marijuana stems, seeds and residue in a garbage can located on the street outside of the residence to be searched. *Flores v. State*, 319 S.W.3d 697, 703 (Tex. Crim. App. 2010). These facts demonstrated, with reasonable inferences, a connection between the drug residue and the premises subject to the warrant. *Id.*; s*ee also Franklin v. State*, No. 06-09-00024-CR, 2009 WL 1974391, at *1, 3 (Tex. App.—Texarkana July 10, 2009, pet. ref'd) (mem. op.) (not designated for publication) (concluding that affidavit substantially corroborated two anonymous tips about drug transactions at the premises when officer attested that two persons seen driving away from the house were stopped and separately admitted they had purchased drugs or had made a payment for past drug transactions on the premises).

In the present case, however, the investigator states in his affidavit only that the named individual at the residence "met with" the occupants of the cars. It does not assert that a package or money exchanged hands or otherwise was transferred into the vehicles or, alternatively, that the occupants said they purchased drugs at the

premises. Although reasonable inferences are permitted, the affidavit must contain the material facts that connect the drugs to the premises to be searched under the warrant. Reasonable inferences may be drawn from direct or circumstantial evidence, but not bare suspicion or speculation.

We conclude that the supporting affidavit on its face lacked material information to reasonably infer a connection between the discovery of narcotics in vehicles and the residence at issue.

### 3. Conclusory statements do not support a probable cause determination.

The State asserts that the officer described his background and experience with contraband in the affidavit as well as information regarding "drug sales at the residence" and the officer's observation of approximately twenty "narcotics transactions." The State thus argues that any inferences made by the magistrate in issuing the search warrant were reasonable and entitled to deference.

The assertion in the affidavit that the investigator "observed numerous (approximately twenty) narcotics transactions" while conducting surveillance is conclusory, particularly given the lack of other facts linking the three vehicle stops to any drug transactions at the residence. No facts are provided in the affidavit concerning the "numerous" other alleged narcotics transactions. "Neither federal nor Texas law defines precisely what degree of probability suffices to establish probable cause, but the probability cannot be based on mere conclusory statements of an affiant's belief." *Rodriguez*, 232 S.W.3d at 61; *see also Baldwin*, 664 S.W.3d

–13–

at 132 (stating that conclusory allegations alone are insufficient to support a finding of probable cause). Even giving deference to the magistrate's decision to credit all reasonable inferences supported by the evidence, conclusory statements unsupported by adequate facts will not support a finding of probable cause for the issuance of a search warrant.

The State finds no support in its reliance on *Davis v. State*. There too, the affidavit contained more direct attestations linking the illegal drugs to the premises searched. In *Davis*, the magistrate authorized a warrant based in part on the affiant's statement that a patrol officer drove past the defendant's residence and "could smell a strong chemical odor he has associated with the manufacture of methamphetamine emitting from the residence." *Davis v. State*, 202 S.W.3d 149, 152 (Tex. Crim. App. 2006). The Court of Criminal Appeals concluded that it could reasonably be inferred that the officer would have had experience with methamphetamine, and combined with other facts in the affidavit, the totality of information provided enough support for the issuance of the warrant. *Id.* at 157.

Unlike in *Davis*, where the affidavit established the fact that a "strong chemical odor" associated with illegal drugs emanated from the premises to be searched, the affidavit in this case does not set out facts to which the officer could have applied his expertise. Even if the magistrate in the present case could have properly inferred that the investigator relied on his training and experience, we conclude that the magistrate could not have reasonably inferred—from the facts set

out in the four corners of the affidavit—that an adequate nexus existed between the drugs later found in three vehicles that had stopped by the premises and the suspected presence of drugs at the premises.

### 4. Summary

In the present case, the affidavit contains a vague tip from an unidentified informant about possible narcotics sales, facts about three discoveries of illegal drugs in vehicles that had stopped by the residence (but no facts indicating a hand-to-hand transaction or otherwise connecting the drugs to the residence), and a conclusory statement that approximately twenty narcotics transactions were observed at the residence over a six-day period. Consequently, we hold that the trial court did not err in concluding that the magistrate lacked a substantial basis for determining that probable cause existed to support the issuance of the search warrant.

## IV. The State Waived Its Standing Complaint

We note that, in the trial court, the State raised the issue of whether Garcia had Fourth Amendment standing to contest the warrant.[1] The trial court concluded that Garcia had an objectively reasonable expectation of privacy at the premises searched and, thus, Garcia had standing to challenge the search warrant.

---

[1] Absent a legitimate expectation of privacy, a defendant lacks standing to challenge the constitutionality of a search. *King v. State*, 670 S.W.3d 653, 656 (Tex. Crim. App.), *cert. denied*, 144 S. Ct. 386 (2023). The concept of Fourth Amendment standing should not be confused with jurisdictional standing. *Byrd v. U.S.*, 584 U.S. 395, 410-11 (2018).

In its appellate brief, the State writes that it does not contest Fourth Amendment standing because the affidavit names Garcia as one of the individuals "in charge of and control[ling]" the premises to be searched. The State may forfeit Fourth Amendment standing issues through its assertions, concessions, and acquiescence in the course of litigation. *State v. Anderson*, No. 05-10-00697-CR, 2011 WL 693264, at *2 (Tex. App.—Dallas Feb. 28, 2011, no pet.) (not designated for publication) (citing *State v. Klima*, 934 S.W.2d 109, 110 n.1 (Tex. Crim. App. 1996)).

Although the State does mention its standing arguments in parts of its brief, we construe the State's brief as waiving its argument on standing and do not further address this issue.

## V.    Conclusion

We affirm the trial court's order granting the motion to suppress the evidence found pursuant to the search warrant.

221107f.u05                             /Emily Miskel/
221108f.u05                             EMILY MISKEL
Do Not Publish                          JUSTICE
TEX. R. APP. P. 47



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-22-01107-CR    V.

XAVIER GARCIA, Appellee

On Appeal from the 283rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F21-33069.
Opinion delivered by Justice Miskel.
Justices Nowell and Kennedy
participating.

Based on the Court's opinion of this date, the order of the trial court granting the motion to suppress is **AFFIRMED**.

Judgment entered this 13th day of March, 2024.



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-22-01108-CR     V.

XAVIER GARCIA, Appellee

On Appeal from the 283rd Judicial District Court, Dallas County, Texas Trial Court Cause No. F21-33070. Opinion delivered by Justice Miskel. Justices Nowell and Kennedy participating.

Based on the Court's opinion of this date, the order of the trial court granting the motion to suppress is **AFFIRMED**.

Judgment entered this 13th day of March, 2024.