

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00124-CR

JOHN ERNEST LANCASTER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 2430278

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

An unnamed tipster submitted a tip online to the Lake Country Crime Stoppers, Inc., that stated the tipster found a DVD containing child pornography at John Ernest Lancaster's house. The magistrate issued a search warrant based on that tip and a jail record showing that Lancaster was in jail at that time. During the execution of the search warrant, the police found a DVD containing child pornography depicting sexual assault of a child. Subsequently, the trial court found Lancaster guilty on three counts of first-degree possession of child pornography depicting sexual assault of a child and assessed punishment at life in prison on each count, with the sentences to run concurrently. *See* TEX. PENAL CODE ANN. § 43.26(d)(2)(B)(ii) (Supp.). On appeal, Lancaster argues that the affidavit for the search warrant lacked probable cause because it relied solely on an anonymous tip and the tip was not sufficiently corroborated. Because the affidavit was sufficient to support issuance of the search warrant, we affirm the trial court's judgment.

I.      **Factual and Procedural Background**

On February 8, 2024, Crime Stoppers received a tip through its online portal. The tipster stated that Lancaster was currently in the Hopkins County Jail for drug possession. According to the tipster, Lancaster requested that the tipster go to Lancaster's house and "take [a] DVD out of his DVD player and put it in his top desk draw [sic] before his granddaughter saw it." The tipster turned on the television, and the recording started playing child pornography. "Shocked at what [she] saw," the tipster "moved the DVD [to] the closet by [Lancaster's] back bathroom on the top shelf under boxes" "[i]n fear [Lancaster] would dispose [of] it." The tipster "was not

2

sure how to report" the finding but said "something need[ed] to be done."[1]  The tipster also stated that Lancaster had several computer hard drives and laptops at his home that the tipster feared might also contain child pornography.  The tipster further mentioned that Lancaster called her through the jail communication system and opined that there would be a recording on that system of Lancaster "asking [the tipster] to move the [DVD]."  The tipster listed the "Address of Incident" as 206 Whitworth.  The tipster also included a copy of a text message received from Lancaster on December 15, 2023, asking the tipster to move the DVD from the DVD player (and the one under the DVD player) and put them in his desk drawer.  Lancaster wrote, "[D]on't wnt [sic] grandkids getn [sic] them ok?"

The next day, Detective Jason Reneau of the Sulphur Springs Police Department drafted an affidavit requesting a search warrant for Lancaster's address at 206 Whitworth Street, Sulphur Springs, Texas.  Besides repeating the tip verbatim, the affidavit stated that Reneau asked the Hopkins County Jail to notify him of Lancaster's release.  The jail informed him that Lancaster was scheduled to be released the following week to a halfway house.  The affidavit also stated, "DET. RENEAU ATTEMPTED TO CONTACT THE TIPSTER BY REVIEWING RECORDED JAIL PHONE CALLS BUT WAS UNABLE TO."  Reneau also included a copy of the text message that the tipster attached to the Crime Stoppers tip and a copy of Lancaster's jail record with his mugshot. Neither the tip nor the affidavit for the search warrant included the tipster's name. The magistrate signed the search warrant the same day.

---

[1] At the end of the tip, the tipster said, "I don't know what I'm supposed to do.  I'm still confused and shocked at what I found[.  A]m I supposed to go to [the] police station and file a police report?"

3

During the execution of the search warrant, law enforcement found a DVD in the same location where the tipster said it would be (i.e., in a closet). However, the police could not get that DVD to play. Officers found another DVD "behind the TV in [the living] room" that contained child pornography. The recordings on that DVD were used as the basis of the indictments.

The grand jury issued a three-count indictment for child pornography under the newly enacted statutory provision that made "a videotape or film that visually depicted conduct constituting an offense under Section 22.011(a)(2) [Sexual Assault]" a first-degree offense. TEX. PENAL CODE ANN. § 43.26(d)(2)(B)(ii); *see* TEX. PENAL CODE ANN. § 22.011(a)(2) (Supp.). Just prior to opening statements, the trial court denied Lancaster's motion to suppress that challenged the affidavit for the search warrant based on the anonymous tip used to obtain the search warrant for Lancaster's residence.[2] At the bench trial, the trial court found Lancaster guilty of all three counts and assessed his punishment at life in prison on each count, with the sentences to run concurrently.

## II. Standard of Review

An issuing magistrate's decision to grant a search warrant should be reviewed with a deferential standard of review. *Davis v. State*, 202 S.W.3d 149, 157 (Tex. Crim. App. 2006); *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Warrants should not be invalidated through "hypertechnical" interpretation of their supporting affidavits. *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *United States. v. Ventresca*, 380 U.S. 102, 109 (1965)).

---

[2]Lancaster brought to the attention of the trial court another motion to suppress based on the search of his cell phone. The trial court denied that motion to suppress. That ruling was not challenged on appeal.

"Reviewing courts must give great deference to a magistrate's probable cause determination, including a magistrate's implicit finding." *State v. Baldwin*, 664 S.W.3d 122, 130 (Tex. Crim. App. 2022). "When in doubt, reviewing courts should defer to all reasonable inferences a magistrate could have made." *Id.*

### III.    Applicable Law

"Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found at the specified location." *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) (footnote omitted) (quoting *Gates*, 462 U.S. at 238). "In determining whether a warrant sufficiently establishes probable cause, [a] Court is bound by the four corners of the affidavit." *State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017) (citing *Lagrone v. State*, 742 S.W.2d 659, 661 (Tex. Crim. App. 1987); *Lopez v. State*, 535 S.W.2d 643, 647 (Tex. Crim. App. 1976)). "Reasonable inferences may be drawn from the facts and circumstances contained within the four corners of the affidavit." *Davis*, 202 S.W.3d at 154. "[T]he law requires that we defer to a magistrate's reasonable, common[-]sense conclusions in assessing whether to issue a search warrant." *Id.* at 158.

"[A]n affidavit relying on hearsay 'is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented.'" *Gates*, 462 U.S. at 241–42 (quoting *Jones*, 362 U.S. at 269). Whenever a police officer relies on others to supply information concerning an alleged criminal offense, the "informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report." *Id.* at 230. "[T]hese elements should [not] be understood as entirely separate and independent requirements

5

to be rigidly exacted in every case . . . ." *Id.* Rather, the elements "should be understood simply as closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.* "Because the focus of inquiry is whether the statements are sufficiently reliable for a finding of probable cause, a deficiency in one of the two factors of reliability of the informant may not be fatal if the totality of the circumstances indicates reliability." *Elardo v. State*, 163 S.W.3d 760, 765–66 (Tex. App.—Texarkana 2005, pet. ref'd). "[I]n a doubtful or marginal case [of probable cause,] a search under a warrant may be sustainable where without one it would fall." *United States v. Ventresca*, 380 U.S. 102, 106 (1965); *see Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). "An affidavit supporting a search warrant begins with a presumption of validity . . . ." *Cates v. State*, 120 S.W.3d 352, 355 (Tex. Crim. App. 2003).

**IV.     Affidavit for Search Warrant Contained Sufficient Indicia of Reliability**

In his sole point of error, Lancaster argues that the affidavit for the search warrant did not contain probable cause because it relied solely on an anonymous tip and the tip was not sufficiently corroborated. We disagree.

**A.     The Content of the Tip**

Reneau's affidavit relies on hearsay evidence from a tipster of unknown reliability. The Texas Court of Criminal Appeals in *State v. Duarte* addressed when a warrant that relies on a "first-time informant" may establish probable cause:

> Federal courts find that probable cause for the issuance of a search warrant exists "notwithstanding" an actual or potential *quid pro quo* obtained by a first-time informant in exchange for the information, not "because" of it. They do so if the tip is corroborated, is a statement against penal interest, is consistent with

6

information provided by other informants, *is a detailed first-hand observation*, or is coupled with an accurate prediction of the subject's future behavior. They do so when there is a substantial basis for crediting the hearsay. Texas courts apply the same principles.

*Duarte*, 389 S.W.3d at 356–57 (footnotes omitted) (citations omitted) (emphasis added).

Here, the tip is a "detailed first-hand observation." *Id.* at 356. The content of the tip provides a first-hand account about uncovering an illegal recording at Lancaster's residence. The tipster (1) identified the address where the child pornography was located as 206 Whitworth, Sulphur Springs, (2) personally viewed the DVD in the DVD player in the home, (3) moved the DVD to a specifically described closet so that Lancaster's granddaughter could not find it, which was a different location than where Lancaster asked the tipster to move it to, (4) knew Lancaster was in jail, (5) had access to Lancaster's home, (6) demonstrated knowledge of the layout of Lancaster's home by stating where the DVD had been (in the DVD player), (7) knew it was a burned DVD, and (8) stated that the DVD contained child pornography. The specificity and number of details of the first-hand account strengthened its reliability. *See id.*; *Gates*, 462 U.S. at 234 ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.").

B. **The Text Message**

The tipster also attached a text message to the tip. A text message does not, generally, fit within the traditional framework in *Duarte*, discussed above. *Duarte*, however, does not strictly limit the application to these traditional means because it also stated, "[T]ips from anonymous or first-time confidential informants of unknown reliability must be coupled with facts from which

7

an inference may be drawn that the informant is credible or that his information is reliable." *Duarte*, 389 S.W.3d at 358. Here, the text message contained unique attributes that allowed the magistrate to evaluate its reliability and credibility, despite the fact that a tipster provided it to law enforcement; that is, it was sent from a jail using a unique system, and its content specifically strengthened the probability that contraband would be located at Lancaster's residence. *See Elrod*, 538 S.W.3d at 559 ("The magistrate did not have to rely upon a presumption of reliability, but rather was able to assess [the informant's] reliability based upon the details she provided."). All text messages, including attachments, sent from the Hopkins County Jail were subject to being monitored and read, each text message cost money, and each text message contained the date it was sent and the name of the sender. "It does not distort common sense or read additional facts into the affidavit" for the magistrate, who was in a unique position to evaluate the attributes of the text message, to reasonably infer that the text message was actually sent from the jail by Lancaster. *See Davis*, 202 S.W.3d at 156.

Understanding that the text message was sent via the jail communication system provided plausibility and internal consistency between the text message and the content of the tip and supported a conclusion that Lancaster was not in a position to move the DVD before law enforcement could execute the search warrant. Regardless of the limited investigation, the text message affirmed that the DVD was located at Lancaster's home in a specific location, Lancaster was in jail, the tipster had access to Lancaster's residence (i.e., Lancaster asked the tipster via text message, "r u still atmyhouse [sic]?") and a DVD inside the DVD player contained material that was not suitable for Lancaster's grandchildren. *See Gates*, 462 U.S. at 232 (quoting *United*

8

*States v. Cortez*, 449 U.S. 411, 418 (1981) ("[T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.")).

### C.    The Investigation

The investigation showed that Reneau called the jail to inquire about Lancaster's release, listened to the jail call referred to in the tip, acquired Lancaster's jail record, located the tipster's phone number in the jail communication system, and attempted to call the unnamed tipster. The jail record allowed the magistrate to determine that Lancaster sent the text message since the jail record and text message showed the same name and that he was in jail at the time the text message was sent. The nature of the jail record strengthened the reliability of the tip and substantiated that Lancaster made the incriminating statements in the text message.

### D.    Conclusion

Based on the detailed, first-hand account in the tip, the unique attributes of and the direct statements made by Lancaster in the text message, and the magistrate's unique position to judge the text messages authenticity, the information is sufficiently reliable to "reduce[] the chances of a reckless or prevaricating tale." *Id.* at 244–45 (quoting *Jones*, 362 U.S. at 271). Reviewing the affidavit in the light of the totality of the circumstances, we conclude that the magistrate had a substantial basis for concluding that there was a fair probability that child pornography would be found in a particular place.[3]

---

[3]We have previously held that the basis of knowledge cannot compensate for a complete lack of reliability. *Elardo*, 163 S.W.3d at 768; *State v. Hill*, 299 S.W.3d 240, 248–49 (Tex. App.—Texarkana 2009, no pet.). To the extent our jurisprudence conflicts with *Duarte*, we follow *Duarte*. *Duarte*, 389 S.W.3d 349.

## V.     Lancaster Did Not Preserve His Other Issues

Lancaster also argues that the information given by the tipster was stale and that law enforcement did not verify Lancaster's address.  Points of error "must correspond or comport with the objection made at trial."  *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998) (op. on reh'g)).  Under Rule 33.1(a) of the Texas Rules of Appellate Procedure, an issue is not preserved on appeal unless the record shows that it was presented to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."  TEX. R. APP. P. 33.1(a)(1).  If the objection at trial does not correspond with the issue on appeal, nothing is preserved for review.  *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999).

Lancaster filed a pretrial motion to suppress challenging the reliability of the information and lack of corroboration.  However, he did not challenge in that motion the staleness of the information or lack of corroboration of the address of the target residence.  He did not mention in the motion the amount of time between the date Lancaster sent the message and the date of submitting the tip.  However, Lancaster only used that information to argue the reliability of the information generally and does not cite to any established law related to staleness.  Lancaster also did not argue those points at the hearing on the motion to suppress.  Therefore, Lancaster waived those issues.

10

## VI.    Conclusion

We affirm the judgment of the trial court.

Charles van Cleef
Justice

Date Submitted:     December 11, 2024
Date Decided:       February 26, 2025

Do Not Publish